CHEHARDY, Judge.
Plaintiff instituted this suit for total and permanent disability benefits, penalties and attorney’s fees under the provisions of the Louisiana Workers Compensation Act. Named defendants were Johns-Manville Sales Corporation, a/k/a Johns-Manville Products Corporation, and Avondale Shipyards, Inc.
*1277 Following trial on the merits judgment was rendered in favor of defendants dismissing plaintiff's suit. Thereafter plaintiff settled his claim against Johns-Man-ville, and has appealed to this court only against Avondale.
The following facts are not in dispute:
Earl Batiste, Sr., was employed at Johns-Manville from May 15, 1965 to April 13, 1970 as a punch press feeder in the shingle department. When he was laid off for lack of work, he earned $2.60 per hour. From 1970 to 1983 plaintiff was employed by Avondale as a grinder and shipper at a wage of $9.70 per hour. He was discharged in January 1983 due to a general reduction of the work force.
Thereafter plaintiff filed this suit against both of his former employers under LSA-R.S. 23:1031, the occupational disease section of the compensation act, alleging he had contracted a painful and debilitating lung disease performing his duties in the immediate area of asbestos dust, silica and other harmful dusts.
Testimony at the trial was given by plaintiff; two medical experts in the field of internal and pulmonary medicine, Dr. Morton Brown and Dr. Robert N. Jones; and Bill Koch, manager of workers compensation at Avondale.
Plaintiff testified as follows:
He was 47 years old at the time of trial (September 12, 1984). He described his duties at Avondale as using a loud vibrating chipping gun to chip the walls of the boats, and then taking a grinder to smooth the iron.
Other people work around the same area, some welding, others insulating pipes, and some cleaning up and burning debris. Sometimes, but not often, other men. did sandblasting in the area. The sandblasters were 40 to 50 feet away from the chippers. When plaintiff first worked for Avondale the sandblasters used white sand, but later they used only black sand known as black beauty. Plaintiff himself did no sandblasting. While performing his duties as a chipper and grinder plaintiff wore a protective mask.
Plaintiff described his duties at Johns-Manville from 1965 to 1970 as a punch press feeder, picking up asbestos shingles and putting them into a machine. He also worked in the pipe plant during that time for three or four months taking pipe as it came out of a machine and putting it in a tray filled with sand. The sand kept the pipe from rolling around. He also helped to unload boxcars containing cement and asbestos on infrequent occasions and if the bags broke he would have to clean up with a broom and shovel.
Plaintiff complains of health problems at the present time principally involving shortness of breath, and a dry cough. He was seen by Dr. Brown and hospitalized for tests at West Jefferson Hospital in June, 1982. After the tests Dr. Brown released him to return to work. Plaintiff admitted he has been a heavy smoker for 25 years, smoking about a pack a day. He has not looked for a job since his unemployment benefits were discontinued.
Dr. Brown, plaintiffs expert, testified he first saw Mr. Batiste on June 7, 1982. He complained of shortness of breath after having five years of exposure to asbestos and silica at the Johns-Manville plant and exposure to dust, welding fumes, and sandblasting particles.
A chest X ray disclosed an infiltrative mass in the upper lobe and scattered nodules throughout both lungs. The doctor concluded the mass represented infection with a mycobacterium-like tuberculosis. Because of a history exposure to silica, the doctor concluded this represented a silico-tuberculosis (silicosis with tuberculosis) or silicomycobacteriosis (silico combined with bacteria).
In his opinion there was a connection between the exposure to silica and contraction of tuberculosis. He felt the scattered nodules around the lung indicated plaintiff had a generalized accumulation, or a reaction in his lungs.
The tests performed in the hospital consisted of a bronchoscopy which was negative and a heart pulmonary function study. *1278 Plaintiff had evidence of a weakened heart muscle.[1]
Plaintiff returned to see the doctor on July 11, 1982 because of the tubercular lesion in the right upper lobe. He was placed on TB therapy, although the TB skin test was negative and the organism was not found. He was treated for 18 months to prevent any progression of the tuberculosis.
When seen on August 81, 1982, tests were made on the liver to insure that plaintiff did not have a liver reaction to the TB therapy drugs. On October 14, 1982 a chest X ray was taken and a breathing test performed. The X ray showed improvement in the inflammatory reaction.
Plaintiff continued to see the doctor at intervals until shortly before the trial. His final diagnosis is that plaintiff had silicosis and silicomycobacterosis.
The doctor stated that to contact silicosis a person would have to be in an environment where there are fine particles of silica in the air. Silicosis is generally a progressive, as opposed to a reversible disease.
Silicomycobacteriosis is to some degree reversible and Dr. Brown concluded a person with occupational exposure to silica would be predisposed to contracting tuberculosis or a similar related lung disease.
The doctor could not apportion the contribution of each job (i.e., plaintiffs work at Johns-Manville as opposed to his work at Avondale) to occupational lung disease. Either employment could have caused the problem and it would be impossible to differentiate.
On cross-examination the doctor stated black beauty is a silicate (a salt). It is not a silica which is pure white. Asbestos is a silicate which has abrasive potential. Certain silicates cause a disease of much lower intensity and longer duration and are not as severe as silica or asbestos; nor do they cause scarring damage to the lung. The doctor could not say with certainty that black beauty causes silicosis or pneumoco-niosis.
Following plaintiffs discharge from the hospital Dr. Brown permitted him to return to work because he knew black beauty was being used at Avondale. Dr. Brown said unless exposure to sandblasting is very extensive, such exposure is not significant.
On August 31, 1982 the doctor reported to plaintiffs attorney that pending further studies plaintiff had possible pneumoconio-sis caused by his work at both corporations.
Dr. Brown testified plaintiff indicated he smoked two pack of cigarettes per day. This contributed to his problem, as well as the dust he was exposed to in his work. He said not everyone exposed to silica gets silicosis and that plaintiff could have developed silicosis without working at Avondale and the pulmonary function studies show only small airway problems which could also be caused by cigarette smoking. Someone who smoked two packs a day for 15 or 20 years could have small airway obstruction with no history of exposure to silica.
The doctor concluded plaintiff could do some type of light or moderate work, but could not do any work involving fibrogenic dust, chemicals or fumes that would be irritating to his lungs.
Dr. Jones, defendant’s expert, evaluated plaintiff on April 14, 1983. The following history was related by plaintiff: He had an eighth grade education and first worked on a sugar cane plantation. From 1965 to 1970 he worked for Johns-Manville and from 1970 to January 1983 he worked at Avondale Shipyard. He sometimes worked around abrasive blasting, but they always used black beauty; he occasionally worked around insulating operations.
Plaintiff complained about shortness of breath, having to rest when mowing the lawn, and labored breathing when climbing stairs. He has an occasional cough, but no wheezing. He stated he was admitted to *1279 the hospital in June 1982 and was told by Dr. Morton Brown that he had active tuberculosis. He is still taking medication for that condition. He was later evaluated by Ochsner Clinic and Hospital by Dr. W.B. Emory where he underwent a bronchosco-py with biopsy and returned to work in August 1982. There was no history of chest injury or surgery.
Plaintiff said he smoked since age 20 up to one pack of cigarettes a day, but smoked fewer now. He has had swelling in the legs for years but no doctor has told him the cause. There was no history of heart disease, chest pain, hypertension, diabetes, liver or kidney trouble. He has had no operation, serious injury or other hospital admission. He complains of poor hearing in recent years.
Following the history, plaintiff was given a physical examination. As the examination relates to the chest, expansion resonance and breath sounds were normal and X rays were taken. X rays and radio-graphs showed normal cardiac size. Lung volumes appeared slightly increased and fine nodules and a few linear opacities were present in all zones of both lungs. There was no plural abnormality. The examination is consistent with tuberculosis and a diffuse nodular interstitial pulmonary disease, possibly silicosis.
Lung function tests were performed and spirometric values were normal except for mild reduction of instantaneous flow rates at low lung volumes. The results were consistent with very mild reversible obstructive ventilatory impairment.
Plaintiffs complaints of shortness of breath were not consistent with the results of the pulmonary function test. His lung function was only minimally impaired. This would not explain shortness of breath while climbing stairs or mowing the lawn. The results of this test might indicate that a person was unfit for channel swimming or marathon running but would not affect ordinary activities associated with work or recreation or produce shortness of breath.
The doctor stated it is quite common for a person to have obstructive ventilatory impairment after exposure to any kind of dust, based simply upon the fact that the person was a cigarette smoker.
He concluded plaintiff probably had sili-cotuberculosis, that his work at Johns-Man-ville involved some exposure to respirable silica, that he might have intermittently worked around abrasive blasting at Avon-dale and may have received exposure to silica in the early 1970s, but plaintiff had told the doctor he had no recollection of any such exposure.
Dr. Jones also said plaintiff had a very mild reversible obstructive ventilatory impairment which was probably the result of lengthy cigarette use. However, he could not exclude a contribution from inhaled dust. He concluded plaintiffs lung function would be expected to support sustained levels of moderate to strenuous physical exertion.
The doctor was of the opinion plaintiffs health should permit his resumption of work as a laborer, provided he does not receive exposure to fibrogenic dust, that he should have periodic chest X rays and pulmonary function test and should stop smoking.
Dr. Jones said black beauty contains no silica, therefore it has no fibrogenic agents and accordingly intermittent exposure would not be detrimental to plaintiff. Nor would there be contra indications if working in an area where welding and welding fumes were present; neither would exposure to sandblasting on only a handful of occasions connote any appreciable risk of developing silicosis.
The doctor reviewed four X rays taken while plaintiff worked at Johns-Manville in 1965, 1966, 1967 and 1969 and found they were all normal. They did not show any evidence of silicosis or tuberculosis or any other abnormality. He agreed plaintiff had silicotubereulosis and that if there is infection with TB, either past or current, it is a complicated case. On the basis of the lung function tests the doctor concluded plaintiff was over the illness part of his tubercular infection at the time of his examination.
*1280 In his opinion plaintiff has two things in his lungs — some scars in the top as a result of the tubercular infection and throughout the remainder of both lungs there are some tiny nodules that are difficult to see but which constitute X-ray evidence of silicosis — but they are away from the tubercular infection and are not numerous or profuse.
He found no evidence of asbestosis and could rule out with a reasonable degree of certainty that a half dozen times of casual exposure to outdoor sandblasting would neither-eause nor aggravate a condition of silicosis. He indicated that silica per se causes an excessive risk of contracting tuberculosis but there is no certainty from reading medical and scientific literature that mere exposure carries the same risk of scarring conditions silicosis carries; and if there was a risk attached to exposure it would require much more exposure than plaintiff had gotten in his job at Johns-Manville.
The doctor did not believe plaintiffs development of tuberculosis was a consequence of his employment and concluded that probably the silicosis became manifest because of the interaction between TB and infection.
If plaintiff was not infected with tuberculosis he would probably have a normal chest X ray without the nodules being visible. The doctor did not agree that a slight obstructive ventilatory impairment such as plaintiff has is sufficient to explain a complaint of shortness of breath. He found no explanation for plaintiffs complaint in the objective evidence of his evaluation. The obstruction could be caused by the cigarette smoking alone. He was unable to apportion the degree to which smoking or dust exposure contributed to plaintiffs problems.
In this court appellant contends the trial court erred in (1) failing to find plaintiffs lung disease was contracted as a result of his employment; (2) failing to award plaintiff compensation benefits; and (3) failing to award plaintiff penalties and attorney’s fees.
Relative to appellant’s first contention the trial court found,
“The evidence is very inconclusive with respect to the causative factor of the plaintiff’s disease. The plaintiff’s present disease process could well be caused by his heavy smoking, 1 or 2 packs of cigarettes per day for over 25 years.
“At all events the testimony adduced at trial indicates there is very little possibility that the limited exposure plaintiff had to white sand at Johns-Manville and at Avondale is the cause of the disease of which plaintiff complains. There was no medical evidence as to asbestosis.
“The evidence of the plaintiff and defendant physicians alike do not show that plaintiff is disabled from doing heavy work, because plaintiff was doing such work until he was laid off by Avondale due to their loss of business.
“The plaintiff has not sought employment since he was required to do so to obtain unemployment benefits.”
A plaintiff in a worker’s compensation case is not relieved of his burden of proof. He must as in all civil cases, prove his case by a preponderance of the evidence. Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1 (1963).
The fact that the instant case is a claim for an occupational disease does not change the standard required of plaintiff. The plaintiff in a worker’s compensation action based upon an alleged occupational disease must establish by a preponderance of evidence that there is a disability which is related to the employment-related disease. Allor v. Belden Corp., 393 So.2d 1233 (La.1981); Laurendine v. Fischbach & Moore, Inc., 398 So.2d 1220 (La.App. 4th Cir.1981).
A trial court may accept or reject an opinion expressed by a medical expert, depending on what impression the qualifications, credibility and testimony of the expert make on the court. Woods v. Petroleum Helicopters, Inc., 415 So.2d 978 (La. App. 1st Cir.1982).
In deciding whether an employee has proven his claimed disability the totality of evidence must be considered. It is *1281 the trial court’s function to determine the weight that is to be accorded to the medical and lay testimony. However, before the question of disability can be addressed plaintiff must prove he contracted the disease during the course of his employment and as a result of the nature of his work. Kramer v. Johns-Manville Sales Corp., 459 So.2d 642 (La.App. 5th Cir.1984); Howard v. Johns-Manville Sales Corp., 420 So.2d 1190 (La.App. 5th Cir.1982).
It is well established that on appellate review the trial court’s factual findings as to disability are entitled to great weight and are not to be disturbed in the absence of manifest error. Howard v. Johns-Manville Sales Corp., ibid. In our review of the record we do not find that the trial judge’s conclusion was manifestly wrong, therefore there was no error in its refusal to grant compensation benefits.
We also find that the employers’ refusal to pay such benefits when first made aware of the claim was based upon a good faith dispute as to the occurrence of the accident or its causal connection to the disability. Thus plaintiff would not be entitled to an award of penalties and attorney’s fees. Thibodeaux v. Dresser Industries, Inc., 407 So.2d 37 (La.App. 3d Cir.1981); Dupre v. Sterling Plate Glass & Paint Co., 344 So.2d 1060 (La.App. 1st Cir.1977).
For the reasons assigned the judgment appealed from is affirmed.
AFFIRMED.

. Defendant objected to evidence relative to the heart as an extension of the pleadings. This was sustained by the trial court.