569 So.2d 659 (1990)
Timothy R. AUSTIN, Plaintiff,
v.
HOWARD DISCOUNT STORES, INC. and Continental Insurance Co., Defendants.
No. 21,749-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1990.
*660 Davenport, Files & Kelly by J. Edward Patton, II, Monroe, for plaintiff.
Blackwell, Chambliss, Hobbs & Henry by Sam O. Henry, III, West Monroe, for defendants.
Before SEXTON, LINDSAY and HIGHTOWER, JJ.
HIGHTOWER, Judge.
In this worker's compensation case, defendants, Howard Discount Stores, Inc. ("Howard's") and its insurer, appeal a judgment granting plaintiff total and permanent disability benefits, plus past and future medical expenses. For reasons herein expressed, after reversing the permanent and total disability award, we remand for a determination of appropriate benefits.

FACTS
Plaintiff, Timothy R. Austin, normally supervised the opening and remodeling of new stores for Howard's, and his duties had entailed no manual labor for seven or eight years. However, beginning in March 1985, he was temporarily assigned to an unskilled carpenter's job during an office remodeling project in Monroe. His activities at that work exposed him to dust, dirt, fiberglass, and other materials commonly associated with such an undertaking. Approximately one month later, he suffered a blackout while driving home at the end of the day and was immediately hospitalized. Dr. Herschel Harter, an internist and nephrologist, initially believed the problem resulted from hypertension and sinusitus. He therefore released his patient on medication following a week in the hospital.
Plaintiff then returned to the remodeling project until May 1985, when he left to supervise the closing of a store in Oklahoma. Several weeks later, during a visit home to Monroe, he complained of a "rattle" in his chest and entered the hospital. On that occasion, Dr. Harter enlisted the assistance of Dr. Robert Sarama, a board-certified pulmonary specialist, whose initial impressions suggested pneumonia as the most likely cause of the disorder. After being treated for that possibility and released from the hospital, plaintiff returned to his work in Oklahoma. On August 7, 1985, after again returning to Louisiana, a biopsy procedure led to a diagnosis of interstitial lung disease. Thereafter, plaintiff made frequent medical visits, but continued to be employed and to receive his normal salary until February 2, 1987, when his job ended during Howard's termination of business.
Plaintiff did not file a worker's compensation claim with his employer until July 1986. He would later allege that, until that time, he was unaware that his condition was occupationally related. Howard's compensation insurer quickly arranged a medical examination by Dr. Judson A. Tillinghast, a pulmonary specialist, who acknowledged that a worsening of chest X-rays and symptoms appeared after the initial blackout.
Months later, in January 1987, plaintiff inquired about the status of his claim at the Office of Worker's Compensation. In response, he received that department's recommendation, dated February 27, 1987, declining his claim for compensation on grounds of prescription, but conceding he was entitled to medical benefits. Plaintiff accepted the findings related to medical benefits, but rejected the prescription determination.
This suit, claiming total and permanent disability benefits, followed. Defendants' answer pled prescription and also contended that no causal connection existed between plaintiff's condition and his employment. After hearing the prescription exception *661 with the merits, the trial court found in plaintiff's favor, awarding $254 weekly in total and permanent disability benefits beginning February 3, 1987. The judgment also granted past medical expenses ($59,616.71), as well as all such future bills.
Defendants now appeal, specifying that the trial court erred in 1) overruling the exception of prescription, 2) finding the lung disease work-related, 3) finding plaintiff totally and permanently disabled, and 4) awarding future medical expenses.

DISCUSSION
It is well established that a trial court's finding of fact may not be set aside on appeal in the absence of manifest error or clear wrongness, and where there is conflict in the testimony, reasonable inferences of fact should not be disturbed on review. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979); Canter v. Koehring Co., 283 So.2d 716 (La.1973); Kennedy v. Bearden, 471 So.2d 871 (La.App.2d Cir.1985); Brents v. Gulf Ins. Co., 465 So.2d 860 (La.App. 2d Cir.1985), writ denied, 469 So.2d 984 (La. 1985). When a trial court's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Rosell v. ESCO, 549 So.2d 840 (La. 1989). We accordingly examine the conclusions of the trial court in light of the foregoing legal precepts.

Prescription
LSA-R.S. 23:1031.1 E states:
All claims for disability arising from an occupational disease are barred unless the employee files a claim with his employer within six months of the date that:
(a) The disease manifests itself.
(b) The employee is disabled from working as a result of the disease.
(c) The employee knows or has reasonable grounds to believe that the disease is occupationally related.
Notice filed with the compensation insurer of such an employer shall constitute a claim as required herein.
This court and others have construed this provision as listing the precipitating conditions in the conjunctive and, thus, requiring that all three exist to commence the running of the prescriptive period. Brown v. City of Monroe, 521 So.2d 780 (La.App.2d Cir.1988); Thornell v. Payne and Keller, 442 So.2d 536 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1231 (La.1984); Naquin v. Johns-Manville Sales Corp., 456 So.2d 665 (La.App. 5th Cir.1984).
As related to prescription and LSA-R.S. 23:1031.1 E, the trial court's written reasons for judgment stated:
The court finds from the evidence presented that plaintiff's disease manifested in July or August 1985, that he was disabled from working as a result of the disease on February 2, 1987, and that he knew, or had reasonable grounds to believe, the disease was occupationally related on and prior to July 8, 1986. Accordingly, the exception of prescription is overruled.
The determination that the disease manifested itself in July or August 1985 is clearly supported by the record. After the blackout incident in March 1985, plaintiff's condition obviously deteriorated. As stated earlier, Dr. Harter originally believed his patient suffered from hypertension and sinusitus. However, continued problems, such as the development of pneumonia in May 1985, along with tests and evaluations performed by Dr. Sarama, resulted in the discovery of interstitual lung disease in August 1985. Although neither plaintiff nor his treating physicians may have been cognizant of the malady in March 1985, it is evident that the disease was perceived by July or August of that year.
On the other hand, the record reflects that plaintiff's disability occurred long prior to February 2, 1987, the date fixed by the lower court. Interpreting LSA-R.S. 23:1031.1 A, the Supreme Court in LaCoste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779 (1967), concluded that an employee is "disabled" when he cannot perform the same or similar work as before contraction of an occupational disease, and not until such disablement does prescription *662 begin.[1] Dr. Harter stated that by August 1985, plaintiff could not have resumed his normal activities. Indeed, plaintiff acknowledged that he never resumed normal duties after returning to work in the summer of 1985, but, instead, was regularly in and out of doctors' offices and the hospital and frequently left work early because of sickness. In his own words, he was "just mostly on the payroll." His testimony further implied that his remaining in defendant's employ served primarily to prevent the loss of certain insurance benefits. Thus, for purposes of prescription, it can be said that disability presented itself no later than August 1985.
Neither does the record support a conclusion that only by July 8, 1986 did plaintiff know or have reasonable grounds to believe his disease was occupationally related. Instead, plaintiff himself testified that, beginning in the summer of 1985, he suspected the relationship but did not believe it was compensable under the Worker's Compensation Act. Of course, the provisions of LSA-R.S. 23:1031.1 E do not concern a realization of whether a disease is compensable, but rather pertain simply to when an employee discovers his disorder is occupationally related. Also, the testimony of Dr. Sarama, that following a biopsy procedure he customarily discusses the cause of a condition with a patient, indicates the likelihood of early knowledge by plaintiff that his disease was related to his work.
Nevertheless, even with a determination that all three of the precipitating conditions came into existence by August 1985, plaintiff still filed his claim timely under LSA-R.S. 23:1031.1 I, which states:
Notice of the time limitation in which claims may be filed for occupational disease or death resulting from occupational disease shall be posted by the employer at some convenient and conspicuous point about the place of business. If the employer fails to post this notice, the time in which a claim may be filed shall be extended for an additional six months.
Howard's employees, James Kelly, Kenneth Blaycock, Michael Posey, and Ted Davidson, all bolstered testimony by plaintiff that his employer failed to properly post notices concerning occupational diseases. Kelly, security director for the entire company, stated permanent bulletin boards were not provided in some stores, and that the remodeling project where plaintiff worked necessitated the relocation of the board several times during the period in question.
Two defense witnesses also testified concerning the posting of notices. Tommy Powell stated that his job responsibilities, handling worker's compensation claims, required that he forward all such documents to individual stores, although he had no knowledge whether actual posting occurred. After acknowledging that such procedures were lax for the two years preceding the closure of Howard's, he remembered personally posting signs in the building where the remodeling transpired. However, defendants' other witness, Wayne Ervin, while recalling the standard worker's compensation notice, could not remember any posting in reference to occupational diseases.
As a whole, the evidence preponderates that occupational disease notices were not adequately maintained. Although Powell testified he personally posted signs on the bulletin board in the building in question, other testimony reflected that same board being moved during the construction work. An employer bears the responsibility for proper posting and notification to employees. Howard's having failed that responsibility, plaintiff had an additional six months within which to present his claim. Hence, *663 after a normal prescriptive period commencing in August 1985, he timely filed in July 1986.[2]

Cause
Defendants also complain of the trial court's finding that plaintiff established, by an overwhelming preponderance of the evidence, the causal relationship between his employment and his disease.[3] Specifically, in brief and in oral argument, defendants maintain that plaintiff's treating physicians, based on either a lack of information or misinformation concerning their patient's 26-year history of smoking, made erroneous assumptions concerning the cause of the lung disorder. Defendants also assert that these same doctors did not avail themselves of plaintiff's X-rays performed prior to the remodeling project, as did Dr. Tillinghast.
Just as with an employment accident, the claimant in a worker's compensation action based on an occupational disease bears the burden of proving by a preponderance that the disability results from a work-related disease. Compare Allor v. Belden Corp., 393 So.2d 1233 (La. 1981); Batiste v. Johns-Manville Sales Corp., 478 So.2d 1276 (La.App. 5th Cir. 1985); Thornell v. Payne and Keller, Inc., 442 So.2d 536 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1231 (La.1984).
The trial court found plaintiff's lung disease pre-existed the period from March through May 1985, but that his work during those months aggravated and worsened his condition to the point of rendering him disabled. Dr. Sarama stated that the inhalation to which plaintiff was exposed on the remodeling project impressed him as a cause of the illness. The doctor also discounted the possibility that smoking could have caused the disease. He stated that only residual damage, manifested by emphysema, not interstitial lung disease, would have appeared after his patient's ten years of abstention from tobacco use. According to his testimony, the developmental pattern of plaintiff's disease was distinguishable from that which occurs in a smoker's lung disorder. After corroborating that opinion, Dr. Harter also concluded that the insult to plaintiff's lungs, as shown by X-rays taken in May 1985, precipitated the interstitial lung disease.
Defendants' reliance on Dr. Tillinghast's evaluation is unjustified. The diagnosis and the opinions of treating physicians are entitled to more weight than those of doctors examining for litigation purposes. Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982). Indeed, Dr. Tillinghast admitted that he was at a disadvantage when compared to the treating physicians in the case, who had *664 more knowledge of the patient's history and more pertinent data at their disposal.
Moreover, even though Dr. Tillinghast received X-rays documenting increased abnormalities in the plaintiff's pulmonary functions in January 1984, an employer takes the employee as he finds him. In Louisiana, it is well settled that an employee's disability is compensable if a pre-existing condition or disease is activated or precipitated into a disabling manifestation as a result of work. Hammond v. Fidelity & Casualty Co. of New York, 419 So.2d 829 (La.1982); Duncan v. State, DOTD, 556 So.2d 881 (La.App. 2d Cir.1990).
Therefore, under the appropriate burden of persuasion, plaintiff proved that the work he performed between the months of March and May 1985 caused his lung disorder.

Extent of Disability
In reasons for judgment, the trial court stated:
The court also finds that plaintiff has proven by a preponderance of the evidence that he is permanently and totally disabled for the reason that he is unable to engage in any gainful employment.
To establish total and permanent disability, a claimant must prove by clear and convincing evidence his physical inability to engage in any employment or self-employment, including any and all odd-lot employment, sheltered employment, and employment while working in pain, notwithstanding the location or availability of any such employment or self-employment. LSA-R.S. 23:1221(2)(c); Ross v. St. Paul Fire and Marine Ins. Co., 556 So.2d 891 (La.App. 2d Cir.1990); Frazier v. Conagra, Inc., 552 So.2d 536 (La.App. 2d Cir.1989). Both Dr. Harter and Dr. Sarama agreed that, although plaintiff probably could not do the work he had done previously, he could handle a desk job. When asked to what extent his patient's disability restricted him, Dr. Sarama stated he could work but only in a smoke and dust free environment, such conditions being necessary to prevent any recurrence or worsening of the problem. Considering their testimony, it is clear that plaintiff does not fit within the total and permanent disability provisions of LSA-R.S. 23:1221(2).
After the August 1985 diagnosis, plaintiff's physicians achieved stabilization of his condition. Hence, any disability cannot be considered "temporary" so as to justify temporary total benefits under LSA-R.S. 23:1221(1). Ross, supra; Johnson v. Monroe Pulpwood Co., Inc., 505 So.2d 862 (La. App. 2d Cir.1987). Of course, plaintiff continued to be fully compensated before, and after, his disease reached that plateau.
In his petition, plaintiff requested only total and permanent benefits. No evidence presented at trial, nor arguments in briefs, directly concerned any relief to which he may be entitled under other subsections of LSA-R.S. 23:1221, save temporary total disability mentioned immediately above.
Of course, where the evidence so establishes, an award different from that sought by the parties or granted below may be rendered by the appellate court. LSA-C.C.P. Art. 2164. However, in such an instance, the record must contain the necessary basis for a complete and appropriate determination. The present record does not.
It is possible that supplemental earnings benefits under LSA-R.S. 23:1221(3) are the appropriate remedy, however, no evidence was introduced by plaintiff that would preponderately show his inability to earn at least 90 percent of his pre-disease wages. A plaintiff has such a burden in proving prima facie entitlement to SEB. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La. 1989). Permanent partial benefits conceivably could also be available, as provided by LSA-R.S. 23:1221(4)(p), but, once again, no evidence established the percentage of loss of physical function. We will accordingly remand to the trial court for a determination of the proper subsidy, if any, consistent with this opinion.[4]

*665 Future Medical Expenses

The trial court rendered judgment not only for plaintiff's outstanding medical expenses to date, but also for "all medical expenses which may accrue in the future." Defendants contend, and plaintiff concedes, that the judgment should not have included such an award.
A plaintiff in a worker's compensation case is not entitled to a judgment for future medical expenses. Such a claim does not arise until the costs are actually incurred, but is always reserved to the employee by operation of law. Lester v. Southern Casualty Insurance Company, 466 So.2d 25 (La.1985); Frazier v. Conagra, supra.

CONCLUSION
For these reasons, the judgment of the trial court is, first, affirmed insofar as it overruled the exception of prescription and found plaintiff's disease causally related to his employment; second, amended to delete the award of future medical expenses; and, third, reversed insofar as finding plaintiff permanently and totally disabled. Further, the case is remanded for the taking of additional evidence to determine the appropriateness of SEB benefits or permanent partial disability benefits. The award of past medical expenses is also affirmed. Costs of this appeal are assessed to defendants.
AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] In pertinent part, LSA-R.S. 23:1031.1 A states:

Every employee who is disabled because of the contraction of an occupational disease as herein defined, ... shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
Despite comprehensive changes to the Worker's Compensation Act, this Subsection has remained intact since its original enactment in 1952. Therefore, the LaCoste definition of disability remains relevant.
[2] The record indicates that filing was accomplished at least by July 10, 1986, when the compensation insurer of Howard's was notified. Powell completed and signed an "Employer's Report of Occupational Injury or Disease" on July 9, 1986.
[3] Defendants contend that, since he engaged in the remodeling work for less than 12 months, plaintiff's burden of proof is controlled by LSA-R.S. 23:1031.1 D, which states:

Any occupational disease as herein listed contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by an overwhelming preponderance of evidence.
Although defendant's approach is novel, we decline to extend application of the Subsection to an employee who worked for the same employer for approximately 14 years, but whose duties changed during that time and, as a result of that change, became exposed to conditions that allegedly caused his disabling condition. Cases dealing with this provision concern only the limited situation whereby an employee changes employers and, within 12 months of the change, claims compensation, not where an employee changes positions and duties while working for the same employer. See Carter v. Avondale Shipyards, Inc., 415 So.2d 174 (La.1981); Crumbley v. Ditto Apparel of California, 486 So.2d 300 (La.App. 3d Cir.1986); Calais v. Louis Ortis Boat Co., 440 So.2d 970 (La.App. 3d Cir. 1983), writ denied, 444 So.2d 1223 (La.1984); Covington v. Rex Painting, Inc., 315 So.2d 368 (La.App. 4th Cir.1975).
[4] It should be noted that if the trial court, based upon proper evidence, is convinced that plaintiff is entitled to receive both supplemental earnings benefits and permanent partial disability benefits, Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982), allows only the recovery of one or the other. This court has concluded that at juxtaposition, supplemental earnings benefits is the more favored remedy, since its provisions provide greater overall recovery. Ross, supra.