625 So.2d 319 (1993)
John D. MASTERS, Plaintiff-Appellee,
v.
SCOGIN AUTO PARTS, INC., Defendant-Appellant.
No. 92-1346.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1993.
Jerold Edward Knoll, Marksville, for John D. Masters.
*320 Robert Dean Hoover, Baton Rouge, for Scogin Auto Parts, Inc.
Before GUIDRY, THIBODEAUX and COOKS, JJ.
GUIDRY, Judge.
This is a worker's compensation case. On April 8, 1989, plaintiff, John D. Masters, injured his lower back while working for defendant, Scogin Auto Parts, Inc. (Scogin). The injury occurred as Masters placed an engine block, which he had lifted by himself, onto the floor of the Scogin facility. The issues presented by this case concern the classification of plaintiff's disability, the propriety of certain medical expenses, and whether the imposition of penalties and attorney's fees against defendant was warranted. Additionally, we must decide which version of La.R.S. 23:1221 to apply to the determination of Masters' disability classification, the pre or post-January 1, 1990 version.
Defendant initially paid Masters temporary total disability benefits (TTD) from the date of injury until November 29, 1989 when, based on several medical opinions, benefits were terminated. On February 22, 1990, Masters filed suit against Scogin to recover compensation benefits, alleging that he was permanently and totally disabled and unable to return to work. After trial on May 26, 1990, the district court rendered judgment signed on June 11, 1990 in which Scogin was ordered to pay Masters TTD benefits from December 2, 1989 to May 26, 1990. Thereafter and continuing through the period of disability, defendant was ordered to pay supplemental earnings benefits (SEB). The judgment also cast Scogin for plaintiff's unpaid medical expenses plus penalties on the unpaid TTD benefits and medical expenses. Additionally, Scogin was ordered to pay $2,500 in attorney's fees to Masters.
From the time of his injury through trial, Masters was treated by several physicians including Dr. Christopher Rich, an Alexandria orthopedic surgeon. Dr. Rich referred Masters to Dr. John Jackson, a New Orleans neurosurgeon, who first examined Masters on August 14, 1989. In June of 1990, Dr. Jackson decided that, because continued conservative treatment was yielding no positive results, it was necessary to perform surgery in an attempt to alleviate Masters' constant pain. On June 22, 1990, nearly one month after trial, Dr. Jackson performed a bilateral discectomy, foraminotomy, and posterior lumbar interbody fusion at the L4-5 level.
Despite the fact that after May 26, 1990 Scogin was liable only for SEB, the employer continued to pay Masters uninterrupted TTD benefits because of the surgery. On July 12, 1990, Masters filed a petition for increase in worker's compensation benefits seeking to be declared totally and permanently disabled and entitled to benefits therefor.
On February 1, 1991, Dr. Clifton Shepherd, a Lafayette orthopedic surgeon, performed an independent medical examination on Masters. He was seen by Dr. Shepherd five times thereafter, during which time several diagnostic tests were performed including a three-dimensional CT scan and magnetic resonance imaging (MRI) test. Plaintiff also received vocational rehabilitation services under the supervision of Mark Cheairs, a certified vocational rehabilitation counselor. Cheairs presented five available sedentary and light duty jobs to Dr. Shepherd for his approval. All of the jobs analyzed by Cheairs, which would pay Masters at least $1,000 per month, were approved by Dr. Shepherd in December of 1991. Based upon Dr. Shepherd's approval of these five jobs, which would pay plaintiff at least 90% of his pre-accident average weekly wage, and his opinion that plaintiff had reached maximum medical improvement, Scogin unilaterally terminated the payment of TTD benefits on December 21, 1991.
In reaction to the termination of his benefits, plaintiff filed a supplemental and amending petition on January 13, 1992 seeking to be declared totally and permanently disabled, penalties and attorney's fees, and payment for certain medical and future psychiatric treatments. Trial on these matters was held on June 29, 1992. The district court rendered judgment in favor of Masters finding that he was still temporarily and totally disabled and, thus, entitled to TTD benefits from December 21, 1991 to June 29, 1992 and continuing during the period of disability.
*321 Additionally, Scogin was held liable for $2,663.33 in previously unpaid medical expenses and $1,458.40 in previously unpaid travel expenses. Defendant was also found arbitrary and capricious for its unilateral termination of benefits and its refusal to pay for a treadmill prescribed by Dr. Jackson for Masters. Statutory penalties of 12% were assessed on the delinquent weekly compensation benefits and the price of the treadmill, $672.99. Attorney's fees in the amount of $4,000 were also awarded to plaintiff. Moreover, defendant was ordered to pay for "psychiatric evaluation and treatment for the plaintiff ... should he go to a psychiatrist".
From this judgment, Scogin appeals and assigns the following errors to the action of the trial court:
1) Improperly applying the "working in pain" doctrine;
2) Awarding TTD benefits instead of SEB;
3) Ordering defendant to pay for the treadmill and future psychiatric treatment; and,
4) Awarding penalties and attorney's fees.
For the following reasons, we reverse only the district court's ruling that Masters is entitled to psychiatric treatment. In all other respects, we affirm.

LAW APPLICABLE
The first assignment of error presents the issue of whether the pre or the post-January 1, 1990 version of La.R.S. 23:1221 is applicable to this case. The statute was amended by Act 454 of 1989, which became effective January 1, 1990. Under the temporary total disability classification, the amendment heightened the claimant's burden of proof to "clear and convincing evidence" and abolished the applicability of the "working in pain", "odd lot" and "sheltered employment" doctrines.
Defendant contends that the district court erred in applying the "working in pain" doctrine to this case. Specifically, Scogin argues that the court should have applied the disability classification law, as amended effective January 1, 1990, because plaintiff's disability rating increased in June of 1990. Alternatively, Scogin argues that Act 454 of 1989 effected an interpretive change in the disability classification statute and should be retroactively applied to the date of his injury, April 8, 1989.
Prior to January 1, 1990, La.R.S. 23:1221(1) provided as follows:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
Under this prior law, a worker was considered temporarily and totally disabled if he was in a recovery period and could not work because of substantial pain. Zeigler v. Pleasant Manor Nursing Home, 600 So.2d 819 (La.App. 3rd Cir.1992). See also Thomas v. Elder Pallet and Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3rd Cir.1986), writ denied, 497 So.2d 312 (La.1986), wherein this court held that the "odd lot" doctrine was applicable to TTD claimants disabled under the 1983 version of the Worker's Compensation Act.
Act 454 of 1989 amended La.R.S. 23:1221(1) as follows:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.

*322 (b) For purposes of Subparagraph (1)(a) of this Paragraph, compensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. (Emphasis ours)
It is well settled that the governing law applicable in a worker's compensation action is that which was in effect at the time of the alleged injury. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). Masters' injury occurred on April 8, 1989. It is this date, not the date upon which his disability classification increased, that is pertinent to the determination of which version of the statute to apply. Defendant's principal contention that the date of disability classification increase (the date upon which Dr. Jackson determined that surgery was necessary) should control is meritless.
In response to Scogin's alternative argument that the amendment to La.R.S. 23:1221(1) by Act 454 of 1989 was merely interpretive of the prior version of the statute and should be retroactively applied, we conclude otherwise. The amendments to this statute enacted a substantive change in the law to be applied prospectively only. The legislation heightened the claimant's burden of proof and affirmatively renounced any presumption of disability. In addition, it eliminated any consideration of the odd lot, sheltered employment, or working in pain doctrines as had previously been allowed in TTD cases.
"Substantive laws either establish new rules, rights, and duties or change existing ones. Interpretive laws, on the other hand, do not create new rules, but merely establish the meaning that the interpretive statute had from the time of its enactment." St. Paul Fire and Marine Insurance Co. v. Smith, 609 So.2d 809, 817 (La.1992). A statute which changes a well settled line of jurisprudence relative to substantive rights only has prospective effect. Id., at 820. In St. Paul, the Supreme Court ruled that the amendment by Act 454 of 1989 to La.R.S. 23:1103, governing the ability of the employer/insurer to recover benefits from third party tort suits, was substantive. See also Wood v. State Farm Mutual Automobile Insurance Co., 591 So.2d 1266 (La.App. 3rd Cir.1991), wherein this court held that the 1989 amendment to La.R.S. 23:1102, which governs the claimant's right to collect attorney's fees for the employer's/insurer's unreasonable refusal to settle a third party tort suit, was substantive.
Clearly, as similarly concluded in St. Paul and Wood, supra, Act 454 of 1989, which enacted comprehensive changes to many sections of the Worker's Compensation Act, effected a substantive change to La.R.S. 23:1221(1). As such, the post-1990 version of the statute cannot be retroactively applied to an injury which occurred on April 8, 1989. Therefore, the "working in pain" doctrine was still viable in this case when it was tried (for a second time) in 1992.

DISABILITY CLASSIFICATION
In its second assignment of error, Scogin urges that the district court erred in finding Masters temporarily and totally disabled. The court determined that plaintiff was unable to return to work because of substantial pain.
In determining disability, the trial judge must consider both medical and lay testimony and determine the weight accorded to *323 that testimony. Louviere v. Mills, 595 So.2d 1224 (La.App. 3rd Cir.1992). In Bruno, supra, at 361, the Louisiana Supreme Court outlined the standard of review to be applied in worker's compensation cases as follows:
In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." West [v. Bayou Vista Manor], 371 So.2d [1146] at 1147; Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La.1987). The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Gonzales v. Babco Farms, Inc., 535 So.2d 822, 824 (La.App. 2d Cir.), writ denied, 536 So.2d 1200 (La.1988) (collecting cases). Indeed, the manifest error/clearly wrong standard of appellate review applies in compensation actions even when the trial court's decision is based solely upon written reports, records or depositions. Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987).
Thus, we must determine whether the district court's conclusion that Masters sufficiently proved his entitlement to TTD benefits was manifestly erroneous or clearly wrong.
In concluding that plaintiff remained temporarily and totally disabled, the trial judge granted more weight to the testimony of Dr. Jackson, whom he determined was the treating physician, and less weight to the testimony of Dr. Shepherd. Although on May 24, 1992, Dr. Jackson approved the same five sedentary and light duty jobs that were previously approved by Dr. Shepherd, on May 28, 1992 (four days later), he expressly stated that Masters was disabled from working at that time. He characterized Masters as having a 20% permanent partial disability of the body as a whole resulting from the fusion. He based plaintiff's disability from work on his still present complaints of pain, which he felt were legitimate, and the fact that plaintiff remained on narcotic drugs such as Percocet and Soma to help alleviate the pain. Dr. Jackson explained that Masters needed more time for nerve root healing and strength and tolerance building before returning to work. He prohibited Masters from lifting any weight. He doubted that any employer would hire him given his condition and the fact that he continued to take narcotics. He predicted that Masters would probably be able to return to work within six to twelve months, but refused to release him to work on the date of his deposition. On cross-examination, Dr. Jackson conceded that the most recent MRI performed on February 27, 1992, showed a solid fusion that looked real good. He also stated that a recent electromyogram (EMG) showed no evidence of nerve root impingement.
At trial, Masters testified that he was still suffering pain in his back, legs and feet. The constant pain has resulted in only three to four hours of sleep per night and has impeded his sex life. The narcotic medication which he takes for pain effects his memory and slows his thought processes. He further stated that he has become very depressed since the surgery and has neither worked nor sought employment since then. Masters felt that, because he has to lie down periodically during the day, the jobs approved by Dr. Shepherd would be unsuitable to his present condition and needs.
Dr. Shepherd testified by deposition. He stated that the three dimensional CT scan, which he characterized as the most sophisticated test for determining the present condition of a fusion, revealed a solid, adequate fusion at L4-5. This test was run in April of 1991. He doubted the genuineness of plaintiff's complaints of pain, finding inconsistencies in objective tests such as the straight leg raising test. According to Dr. Shepherd, Masters' reaction indicated that his pain derived from a non-organic, non-physiologic or non-atomic source. This tended to suggest that plaintiff was magnifying the severity of his pain. It was Dr. Shepherd's opinion that Masters was capable of lifting ten pounds frequently and twenty pounds occasionally. Based on this determination, he approved the *324 sedentary and light duty jobs available to plaintiff. Dr. Shepherd concluded that, even if the fusion was not completely solid, plaintiff could still perform sedentary work of some type.
Mark Cheairs, plaintiff's vocational rehabilitation counselor, stated that, as of the date of trial, it was his opinion that Masters was employable. He met with Masters four times. Cheairs further opined that Masters was capable of light duty employment as outlined in the job analysis forms approved by Drs. Shepherd and Jackson, which approval Dr. Jackson apparently withdrew four days later in his deposition.
Applying the aforementioned legal principles of appellate review to the totality of the evidence presented on this issue, we conclude that the trial judge's conclusion that Masters was temporarily and totally disabled and thus entitled to TTD benefits was not manifestly erroneous or clearly wrong. While we consider this issue to be close, the district court's choice of one of the two reasonably permissible views of the evidence, which was based upon its weighing of the credibility of the conflicting testimony, is not reversible on appeal.

MEDICAL EXPENSES
Scogin questions the trial court's conclusion that it must pay for Masters' treadmill and future psychiatric evaluation and treatment.
An employer/insurer is obligated to provide medical and psychological care to the claimant as such care becomes necessary. La.R.S. 23:1203(A). Liability for medical expenses arises as they are actually incurred. The injured worker is not entitled to an award for future medical expenses, but his right to seek payment therefor is always reserved by operation of law. Austin v. Howard Discount Stores, 569 So.2d 659 (La. App. 2d Cir.1990).
The treadmill was prescribed by Dr. Jackson, plaintiff's treating physician. He explained that it was meant as a further incentive for Masters to exercise in an attempt to strengthen his back. Dr. Jackson stated that the treadmill would definitely help Masters recover more quickly because of its variable speeds, inclines, and degrees of difficulty. Dr. Shepherd countered that the treadmill was an unnecessary medical expense if adequate walking space was available in plaintiff's neighborhood. Given the conflicting nature of this medical testimony, we cannot say that the trial judge's resolution thereof and resulting conclusion that the treadmill was necessary were clearly erroneous. This award is affirmed.
The court also found Scogin liable for future psychiatric evaluation and treatment if the plaintiff chooses to see a psychiatrist. Masters testified that he had become very depressed since his surgery. When he informed Dr. Jackson of his mental condition, the physician recommended that he be seen by a psychiatrist. Dr. Shepherd, in a letter to the defendant, stated that if psychiatric treatment was found to be necessary and approved, he would recommend Dr. Cole in Lafayette.
The record on appeal does not contain sufficient evidence to substantiate the determination that Masters is entitled to psychiatric treatment. Plaintiff simply failed to prove that, at the time of trial, such treatment was medically necessary. Plaintiff does, however, have the right to seek psychiatric treatment and have his employer pay for it should it become medically necessary. This right, as mentioned, is reserved to Masters by operation of law and need not be reserved as future psychiatric evaluation and treatment in the judgment. We therefore reverse this portion of the trial court's judgment.

PENALTIES AND ATTORNEY'S FEES
The district court assessed penalties upon the cost of the treadmill, $672.99, and the TTD benefits Masters was entitled to for the period from December 21, 1991 through June 29, 1992. Additionally, attorney's fees of $4,000 were awarded.
La.R.S. 23:1201(E) provides for the imposition of a 12% penalty on compensation or medical benefits which the employer/insurer fails to timely pay. Penalties are not to be assessed when the employee's right to such *325 benefits has been reasonably controverted by the employer/insurer. Furthermore, La.R.S. 23:1201.2 provides, in pertinent part, as follows:
... Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims.
These penal statutes must be strictly construed. Fusilier v. Liberty Rice Mill, Inc., 569 So.2d 1050 (La.App. 3rd Cir.1990). Whether the refusal to pay or the discontinuation of benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed in the absence of manifest error. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La. App. 1st Cir.1989), writ denied, 553 So.2d 466 (La.1989).
We cannot say that the imposition of penalties upon the cost of the treadmill was manifestly erroneous. Ronald Francis, the claims supervisor for Summit Claims Management, testified that he personally questioned Dr. Jackson about the necessity before denying payment for a treadmill. In a letter to Masters' attorney, he stated that he would evaluate the type necessary and supply it to Masters in the very near future. After consulting with Dr. Shepherd, Francis concluded that the treadmill was not medically necessary. Plaintiff's attorney then paid for the equipment. Although we question whether penalties were warranted given the conflicting opinions expressed, we cannot say that the imposition of penalties was clearly wrong.
Penalties and attorney's fees assessed upon the discontinued weekly TTD benefits were also warranted. Masters' benefits were cut off entirely based upon Dr. Shepherd's approval of five sedentary to light duty jobs. Defendant did not seek the approval of plaintiff's treating physician before the discontinuance in December of 1991. While we are aware that Scogin was, under the first judgment, only obligated to pay Masters SEB, the complete discontinuance of all TTD benefits which had been voluntarily paid was arbitrary, capricious and without probable cause. It is also clear that plaintiff's right to such benefits were not reasonably controverted. Scogin cannot simply disregard a valid court judgment of disability obligating it, at the very least, to pay SEB and unilaterally terminate benefits in direct contravention of such judgment. See Fusilier, supra, at 1055.
In conclusion, we affirm the district court's imposition of penalties and attorney's fees.

DECREE
For the above and foregoing reasons, the judgment of the district court is reversed insofar as it obligated defendant, Scogin, to pay for plaintiff's future psychiatric evaluation and treatment. In all other respects, the judgment is affirmed. All costs of this appeal are assessed to defendant, Scogin Auto Parts, Inc.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.