WATKINS, Judge.
With a stipulation of liability of record, the parties to this personal injury action proceeded to trial on two questions:
1. Did an automobile liability policy or an errors and omissions policy afford coverage on the date of the accident?
2. What was the amount of plaintiffs’ damages?
The first question was submitted for decision to the trial judge; the second went to the jury. The trial judge ruled in favor of the alleged automobile liability carrier, Gulf Insurance Company (Gulf), and against the errors and omissions insurer, Employers Reinsurance Corporation (Employers). Finding that the result reached by the trial judge is correct, we affirm.
The jury rendered a verdict for some damages, but it rejected the plaintiffs’ claims for mental anguish, permanent disability, future medical expenses, future pain and suffering, and loss of consortium. Finding that the jury’s decision was tainted by legal error, we reverse. Furthermore, finding that the record before us is incomplete concerning the existence vel non of a pre-existing condition, we remand for a new trial.
INSURANCE COVERAGE
Plaintiffs, Carl and Brenda Swafford, brought this personal injury action after Mr. Swafford’s automobile was rear-ended while he was stopped at a traffic light on October 4, 1985. The automobile which hit the Swafford vehicle was a 1984 Chevrolet Celebrity driven by Frankie LaFleur while on a business mission for Carenero Nursing Home, Inc., a corporation which owned and operated two separate and distinct businesses: Beckets Pharmacy, 1004 Johnson Street, Lafayette, Louisiana; and Evangeline Oaks Guest House, Carenero, Louisiana.
Gulf issued a business automobile insurance policy (# BA5168581) to cover a 1977 Chevrolet Chevette to Evangeline Oaks of Carenero d/b/a Beckets Pharmacy in Lafayette, Louisiana, for a term beginning May 23, 1985, to expire on May 23, 1986. Gulf denied coverage which would render it liable for the accident involving the 1984 Celebrity which was owned by Mr. LaFleur and leased to Carenero Nursing Home, Inc.
Plaintiffs and third party plaintiffs attempted to show that there was coverage under the after-acquired automobile clause of the Gulf policy. The trial court decided otherwise, and we agree that there was no coverage. In written reasons for judgment the trial court explained:
Frankie LaFleur operated Bechet’s (sic) Pharmacy from 1978 through 1983. In 1983 Frankie LaFleur founded Caren-ero Nursing Home, Inc. which does business as Evangeline Oak of Carenero. In January 1985, said nursing home acquired Bechet’s (sic) Pharmacy. The 1984 Chevrolet Celebrity involved in the accident was owned by Frankie LaFleur and leased to Carenero Nursing Home, Inc. by lease dated September 24, 1985.[1] This vehicle was not used for pharmacy business. The pharmacy owned a 1977 Chevette which was listed on a business auto policy issued by Gulf Insurance Company. At the time of the accident, Mr. LaFleur was on nursing home business. The named insured on the Gulf Insurance Company policy which was effective from 5/23/85 to 5/23/86 was Evangeline Oak of Carenero d/b/a Be- *59 chet’s (sic) Pharmacy[2] and the business of the insured was listed as “pharmacy.”
Lester Gil Insurance Agency through Charles Gil had been providing insurance for Mr. LaFleur since 1976. Lester Gil Insurance Agency represented multiple insurance companies. It is obvious from the multiple depositions of Mr. LaFleur that Mr. LaFleur was not well acquainted with insurance_ Mr. La-
Fleur expressed an interest in being covered under the nursing home umbrella policy. Mr. Gil suggested that Mr. La-Fleur lease the 1984 Chevrolet Celebrity to the nursing home, ... Mr. LaFleur did not receive a binder or any other written confirmation of coverage from Gulf Insurance Company or any other insurer. Lester Gil Insurance Agency did not inform Gulf Insurance Company that this vehicle was being added to any policy as required by the agency agreement.
After the accident on October 4, 1985, Charles Gil paid the property damages from his own funds on the LaFleur vehicle. He further forwarded a demand letter from the. plaintiff to Gulf and attempted to obtain retroactive coverage on the LaFleur vehicle in May, 1986. Mr. LaFleur never paid a premium for the addition to the policy of the 1984 Celebrity. Mr. Gil never billed Mr. La-Fleur because an endorsement was never obtained, and Mr. Gil never requested that the vehicle be added to any policy.
This case does not specifically present a legal issue. The resolution in this case is primarily a factual resolution. The Court finds that there is insufficient proof that Mr. LaFleur relied upon the apparent authority of Charles Gil to bind Gulf Insurance Company. Mr. LaFleur’s deposition indicates that no representation was made to him that Gulf Insurance Company specifically- insured him, only that he would be covered. Charles Gil does not indicate that he made any representation to Mr. LaFleur that he was specifically covered by Gulf Insurance Company. His representation was simply that Mr. LaFleur would be covered by some insurance company. It is apparent from the depositions that Mr. Charles Gil simply erred in failing to properly place coverage for Mr. LaFleur who was relying upon the expertise of Charles Gil to properly insure the 1984 Celebrity.
The Court finds that there was no coverage under the “after acquired” provisions of the Gulf policy. There is no doubt that the insured was Bechet’s (sic) Pharmacy doing pharmacy business. There was never any discussion concerning placing the vehicle in question on the pharmacy policy. The nursing home and the pharmacy were treated as separate entities for insurance purposes.... The minutes of Carenero Nursing Home, Inc. ... and the lease ... leave no doubt that the nursing home business was intended and coverage was to be under the nursing home umbrella policy.
Therefore, the Court finds that Gulf Insurance Company had no coverage and is not liable. The Court further finds that Employers Reinsurance Corporation is liable for Mr. Gil’s failure to properly place coverage....
Accordingly, we affirm that portion of the judgment of the trial court which decreed that Frankie LaFleur and Carenero Nursing Home, Inc., d/b/a Evangeline Oaks Guest House, were liable to Carl R. Swafford and that Lester Gil Insurance Agency and its insurer, Employers Reinsurance Corporation, were liable to Frankie LaFleur and Carenero Nursing Home, Inc. for indemnification and attorney’s fees.
QUANTUM
The jury found that Mr. Swafford was injured as a result of the October 4, 1985 *60 accident. It awarded him a total of $70,-000.00, broken down as follows: $38,000.00 for lost earnings, past and future; $10,-000.00 for past pain and suffering; and $22,000.00 for actual medical and related expenses. As previously mentioned, the jury awarded nothing for past or future mental anguish, for future pain and suffering, for future medical expenses, or for permanent disability. Additionally, the jury denied the consortium claim of Mrs. Swafford.
The jury’s verdict must be set aside because it was tainted by the jury’s consideration of illegal “evidence,” specifically the medical records of the chiropractor, Dr. Frances Wiggins. On appeal, the plaintiffs urge that the trial judge erred in “admitting” the chiropractic records of Dr. Wiggins. We agree that the trial court’s unusual dispositive ruling regarding the chiropractor’s testimony and records was reversible error.
The evidentiary issue of the chiropractor’s testimony and/or records reared its head on the first day of trial after the jury had been retired. Counsel for defendant Employers informed the court and other counsel of his intention to call Dr. Wiggins as a rebuttal or an impeachment witness following the plaintiff’s in-court testimony before the jury to the effect that he denied and/or could not recall complaining to the chiropractor of previous back pain. Counsel for Employers requested that the court issue a subpoena instanter for Dr. Wiggins or allow counsel to “simply use those records and submit those so that they speak for themselves.... ” Plaintiffs objected to Dr. Wiggins’s live testimony on the ground that she had not been listed by defendant as a witness pursuant to the court’s pre-trial order; plaintiffs objected to the records as containing extraneous and prejudicial material which would tend to confuse the jury. After satisfying himself that the chiropractic records were indeed contradictory in nature,[3] the trial judge correctly ruled that this was rebuttal or impeachment evidence not barred by the defendants failure to list the witness. Civil Rules of the Nineteenth Judicial District Court, Rule VII, Sec. 3(H); see Johnson v. State of Louisiana, Div. of Administration, 510 So.2d 87 (La.App. 1st Cir.1987).
However, the trial judge voiced a reluctance to subpoena Dr. Wiggins because of an agreement between the bench and the local doctors that subpoenas without prior notice would not be used. The trial judge indicated a preference for the use of the records, stating that he could not imagine the doctor’s testimony being at variance with the records.
But the chiropractic records are not among the exhibits in the record on appeal, and it appears that they were never introduced into evidence. With court approval, photocopies of parts of the records were apparently distributed to the members of the jury by counsel for Employers for their perusal during his closing argument. The record before us contains neither a transcript of the closing argument nor a copy of what was viewed by the jurors. However, even if we were to order correction of these record deficiencies, we could not decide the case without another trial.
A new trial is necessary because the plaintiff is entitled to have the issue of his damages decided without consideration of documents which, even if they had been introduced into evidence, were rank hearsay. Correspondingly, the defendant is entitled to introduce live testimony concerning the issue of a pre-existing condition. Such live testimony was not precluded by the pre-trial procedure nor by the extra-judicial agreements of the court, which, although for a laudable purpose, cannot override the right of a party to present its case. Without this evidence the record is incomplete.
Accordingly, that portion of the trial court judgment awarding Mr. Swafford $70,000.00 in damages is vacated and set *61 aside, and that portion of the trial court judgment dismissing the claim of Mrs. Swafford is reversed; all other portions of the judgment are affirmed. The case is remanded to the trial court for a new trial between plaintiffs, Carl and Brenda Swaf-ford, and defendant, Employers Reinsurance Corporation, on the issue of damages only. Costs of appeal are assessed equally against plaintiffs, Carl and Brenda Swaf-ford, and defendant, Employers Reinsurance Corporation.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR A NEW TRIAL.
EDWARDS, J., concurs in the result.

. The lease was executed on September 24, 1985, but the terms of the one-year lease made it effective from September 1, 1985.

. Gulf's opponents argue that since Carenero Nursing Home, Inc. acquired the pharmacy in January of 1985, then the policy should have been reformed to list the true owner of the business as the named insured. We agree with Gulf that it is immaterial which entity is listed as the named insured, as the automatic 30-day coverage for an after-acquired automobile had expired on the date of the accident by the terms of the lease. Since Gulf was notified neither by the listed named insured nor the then-owner of the business within the 30 day period, coverage was not extended to the "new" vehicle.

. Counsel for Employers informed the court that Dr. Wiggins’s records would bear out that the plaintiff's complaints were from May 15, 1984, through the summer of 1984, and then following an automobile accident on July 26, 1985, all prior to the accident being sued upon, which occurred on October 4, 1985.