614 So.2d 325 (1993)
Phillip A. ZANCA
v.
EXHIBITION CONTRACTORS COMPANY and the Travelers Insurance Company.
No. 92-CA-1671.
Court of Appeal of Louisiana, Fourth Circuit.
February 11, 1993.
*326 Rebecca L. Denton, Office of James J. Morse, New Orleans, for appellant.
Joseph Marcal, III, New Orleans, for appellee.
Before WARD, JONES and LANDRIEU, JJ.
*327 JONES, Judge.
This is an appeal of a decision granting the plaintiff workers' compensation benefits in the amount of $76.00 per week beginning May 25, 1990.
On appeal the defendants, the Exhibition Contractors Company and its insurer, The Travelers Insurance Company, argue that the hearing officer erred in finding that the plaintiff, Phillip A. Zanca established that he was entitled to temporary and total disability benefits. The defendants also argue that the hearing officer erred in refusing to allow the introduction of factual testimony on the affirmative defense of intoxication and medical testimony to rebut the plaintiff's medical condition. For the reasons herein given, we reverse the judgment of the hearing officer and remand the case for a new hearing.

STATEMENT OF FACTS
On May 25, 1990, the plaintiff, Phillip A. Zanca was working as an "extra" out of Painters & Allied Trade Local 1244 for Exhibition Contractors Company. This was the first day that the plaintiff had been called out to work for the defendant, Exhibition Contractors Company. While dismantling a booth at the exhibition center in New Orleans, the plaintiff was allegedly injured. The plaintiff testified that while he was holding a piece of the booth over his head he felt a snap or popping in his back. A co-worker corroborated plaintiff's testimony that he immediately complained of back pain, stopped work, and reported the injury to the acting supervisor on the job. The acting supervisor wanted the plaintiff to wait for the main supervisor to return. However, the plaintiff left the place of employment and filed for workers' compensation benefits in July of 1991. A hearing was held on March 12, 1992.
At the conclusion of the hearing the hearing officer found that the plaintiff was totally and temporarily disabled and ordered the defendants to pay worker's compensation at the rate of $76.00 per week beginning May 25, 1990 and continuing for as long as the plaintiff was disabled. The hearing officer also ordered the defendants to pay all medical bills and expenses and the expert witness fee of the plaintiff's treating physician. Plaintiff's claim for attorney fees and penalties was dismissed.

ENTITLEMENT TO TOTAL TEMPORARY BENEFITS
The first issue to be addressed by this court is whether the hearing officer erred in finding that the plaintiff was totally and temporarily disabled because of the accident that occurred on May 25, 1990. The prerequisites for receiving temporary total disability are enunciated in La.R.S. 23:1221(1) which provides in relevant part:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
* * * * * *
(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability *328 of any such employment or self-employment (emphasis added).
Pursuant to these provisions, a claimant must prove that he is unable to engage in any gainful occupation, whether or not it is the same type of work in which he was engaged at the time of injury in order to receive temporary total disability benefits. Sharpless v. Jo Ellen Smith Medical Center, 557 So.2d 287, 288 (La. App. 4 Cir.1990), writ denied, 558 So.2d 606 (La.1990). Although this Court recognizes that compensation cases are to be liberally construed in favor of the employee, we are also mindful of the fact that the burden for establishing entitlement to temporary total benefits rests on the plaintiff. By amending the provisions of La.R.S. 23:1221(1)(c) to specifically state that benefits can be awarded only if the employee proves that he cannot engage in any employment, regardless of the nature and regardless of whether such employment can be performed while working in any pain, the Legislature has effectively eliminated all but the most disabled employees from receiving temporary total disability benefits. While the wisdom or fairness of the amending legislation may be questioned, this Court is bound to apply the law as enacted by the Legislature.
At the trial of this case, the plaintiff testified that he had been in constant pain since the time of the accident. He stated that he took four to five hot baths a day to try to alleviate the pain which he experienced. Although he retained an attorney to represent him in handling his workers' compensation litigation on May 29, 1990, he did not receive any medical treatment until July 11, 1990 when he saw Dr. David Aiken for the first of several treatments. The plaintiff received physiotherapy at that first visit, missed the remainder of his July appointments and did not return until October 3, 1990. X-rays of the spine were taken at that first visit. At that time, Dr. Aiken opined that other diagnostic tests would probably be needed. Plaintiff received several physiotherapy treatments in October but did not report for his scheduled appointment on November 30, 1990. He reappeared at the doctor's office on December 12, 1990 complaining of the same pain and Dr. Aiken again recommended that diagnostic tests be performed. However, plaintiff had no other contact with Dr. Aiken for approximately ten months. On November 6, 1991, he returned for treatment. This time, the doctor again recommended diagnostic testing. The tests were finally performed by the Clearview Medical Imaging Center on December 6, 1991. A radiologist report dated December 16, 1991 indicated that plaintiff had a broad based disc herniation at L5-S1.
Dr. Aiken testified that the plaintiff was suffering from an abnormal disc that was causing pain. This injury, according to Dr. Aiken was consistent with the reported injury of May 25, 1990. Dr. Aiken assigned the plaintiff a 20 percent disability in his back and further testified that for certain specific occupations which involve bending, lifting, and pushing his disability would be 100 percent.
The plaintiff introduced no evidence to support a finding that his disability kept him from engaging in any type of employment. He simply testified that the last place that he was employed was the Exhibition Contractors on May 25, 1990 and at one point during the hearing stated "I can't work since the accident". No testimony was elicited concerning his educational background, work history or history of wages. Although his treating physician, Dr. Aiken assigned a 100% disability to the plaintiff for specific occupations, he also testified that the plaintiff is able to perform certain sedentary type work. Dr. Aiken also testified that he had never instructed the plaintiff not to return to work.
The evidence in the record presents a close call as to whether the plaintiff established that his disability arose out of the accident of May 25, 1990. However, absent a finding of manifest error, the hearing officer's findings of fact are entitled to great weight. Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La. 1980), Bailey v. Zurich American Ins. Co., 503 So.2d 611 (La.App. 4th Cir.1987). For this reason, we conclude that based upon *329 the admissible evidence presented to him at the hearing of this case, the hearing officer did not commit manifest error in finding that the plaintiff became disabled because of the May 25, 1990 accident. However, the hearing officer was manifestly erroneous in his determination that the plaintiff was entitled to temporary total disability benefits. The uncontroverted testimony of Dr. Aiken established that the plaintiff could engage in sedentary employment. Although it is possible that the plaintiff may be entitled to receive supplemental earnings benefits;[1] he is admittedly capable of performing sedentary work and is thus not entitled to receive temporary total benefits.

ADMISSIBILITY OF EXCLUDED EVIDENCE
The second issue to be addressed by this court is whether the hearing officer erred when it excluded certain documentary evidence and factual testimony because of the defendants' failure to disclose the evidence and names of the witnesses on the pre-hearing questionnaire prior to the discovery cut-off deadline of January 31, 1991.
Pursuant to the provisions of La. C.C.P. art. 1551, a court has wide discretion to provide for implementation of a pre-trial order and to insure that the terms of the pre-trial order are enforced. The purpose of having a pre-trial order was explained in Gilcrease v. Gilcrease, 438 So.2d 658, 662 (La.App. 2 Cir.1983), writ denied, 442 So.2d 461 (La.1983), wherein our brethren of the Second Circuit stated:
La.C.C.P. Art. 1551 outlines pre-trial conference procedure in Louisiana. The theory inherent in pre-trial procedure is to avoid surprise and to allow orderly disposition of the case. The pre-trial order, or as in this case the pre-trial agreement, controls the subsequent course of the action but can be modified at trial to prevent substantial injustice.... (cites omitted.)
This need for an orderly disposition is particularly important in worker's compensation cases where the claimant has allegedly suffered injuries for which compensation may be sorely needed to offset lost income during a period of unemployment. For this reason, the same considerations underlying cases before a district court judge apply in worker's compensation cases.
Because of the need to insure for an orderly disposition of cases, a trier of fact is given broad discretion to determine whether or not to modify a pretrial order listing witnesses and narrowing issues. However, that discretion is necessarily controlled by the principle that it must be exercised to prevent substantial injustice to the parties who have relied on the pre-trial rulings or agreements and structured the preparation and presentation of their cases accordingly. Naylor v. La. Dept. of Public Highways, 423 So.2d 674, 679 (La.App. 1st Cir.1982), writ denied, 427 So.2d 439 (La. 1983); Martin v. Hertz Corp., 533 So.2d 1365 (La.App. 3 Cir.1988), writ denied, 535 So.2d 746 (La.1989).
Along with the discretion to control the proceedings, the trial court also has the discretion to extend discovery deadlines and should do so in cases where it is necessary in order to prevent manifest injustice. The matter of whether to modify the pre-trial order is solely within the discretion of the trier of fact. Absent an abuse of discretion, the decision of the trier of fact will be upheld. In deciding whether to modify a pre-trial order, a trial court must be ever mindful of the fact that the objective of our legal system is to render justice between the litigants upon the merits of the controversy rather than to defeat justice upon the basis of technicalities. Naylor, supra at 679.
*330 The burden of proving that the trier of fact abused his broad discretion when he failed to allow a modification of the pre-trial order rests with the defendant.
A review of the record before us reveals that the trial court did not abuse its discretion when it refused to allow the defendants to introduce the testimony of Mr. Ferbosses and Mr. Bill Maus. The defendants argued that the testimony of these two witnesses was vital to their defense that plaintiff was intoxicated at the time the accident occurred. However, they offered no explanation for excluding these witnesses names from the pre-hearing questionnaire which they submitted on November 14, 1991. Defendants had knowledge from the day of the alleged injury that the issue of intoxication was relevant in this case.[2] Both witnesses were obviously involved in the case from the very beginning and defendants should have known that their testimony would be needed at the time that they filed their original answers to the pre-hearing questionnaire. Any injustice which the defendants suffered because of the hearing officer's refusal to allow the testimony of these two witnesses was entirely because of defendants own actions. For this reason, we find no abuse of discretion in the hearing officer's decision to exclude the testimony of Mr. Ferbosses and Mr. Bill Maus.
Additionally, our review of the entire record leads us to believe that the hearing officer did not abuse his discretion by refusing to allow the defendants to submit the testimony and/or reports of Doctors Nutik and Voth.
The documentary evidence which the defendants sought to introduce consisted of medical reports from Doctor Nutik and Dr. Voth. The hearing officer refused to allow the documents into evidence but allowed the defendants to proffer the documents. Plaintiff's sole objection to the admission of these documents was the fact that they were not listed on the pre-hearing questionnaire. Nor were they made available to him until after the January 31, discovery cut-off deadline.
In concluding that the hearing officer did not abuse its discretion in excluding this evidence, we take note of the chronological sequence of the proceedings. Plaintiff's claim for benefits had been pending since July, 1991. A pre-trial conference had been held on November 18, 1991. At that time, trial was scheduled for February 27, 1992 and a discovery cut-off date of January 31, 1992 was imposed. On November 14, 1991 the attorney for the defendants filed answers to the pre-trial listing only three witnesses: 1) a representative of Exhibition Contractors, Inc., 2) a representative of the Travelers Insurance Company and 3) any examining doctor.
Subsequently, on January 31, 1992 a motion to allow the original attorney for the defendants to withdraw from representing the defendants and to allow the substitution of new counsel was filed. The order allowing the substitution of counsel was signed by the hearing officer on February 12, 1992. On February 19, 1992 the defendants, through their new counsel of record filed an amended answer alleging that the plaintiff had refused to be tested for drugs or alcohol immediately after his injury, therefore the presumption that he was intoxicated applied so as to preclude the payment of benefits pursuant to the provisions of La.R.S. 23:1081. The order allowing the amended answer to be filed was signed by the hearing officer on February 21, 1992. On February 24, 1992, defendants filed a supplemental and amending answer to the pre-hearing questionnaire wherein they added John Mouse (sic) and Bill Mouse (sic), Fred Jennings, and Ralph Ferbosses as fact witnesses to testify at the hearing. They reiterated their intention to rely upon the issue of plaintiff's intoxication as a bar to recovery and sought to add new exhibits consisting of medical reports dated February 17, 1992 and February 24, 1992 from Dr. Gordon Nutik and a medical report *331 dated February 24, 1992 from Dr. Michael Voth.[3]
On the morning of February 27, 1992, the plaintiff filed an opposition to the defendants amended and supplemental answers. Plaintiff argued that he was prejudiced in that he had been denied the right to address the newly raised issue of intoxication or to secure additional witnesses to rebut the testimony and evidence the defendants sought to introduce. The hearing officer ruled that the defendants would not be allowed to call the new witnesses nor would they be allowed to submit the medical reports which had been obtained after the discovery deadline.
For reasons unrelated to this appeal, the trial of the case was continued to March 12, 1992. On March 5, 1992, the defendants filed a motion seeking an extension of the discovery deadline and again sought introduction of the medical records and testimony of the new witnesses. Defendants argued that the plaintiff was no longer prejudiced by the late filing because now the plaintiff had additional time to rebut the new evidence because of the new trial date. Alternatively the defendants sought permission to depose Dr. Nutik for trial purposes. The plaintiff filed an opposition to the motion on March 6 arguing that the matter had already been ruled upon by the court and further advising that his trial schedule would not allow him to participate in any discovery prior to the trial date. Plaintiff's counsel further argued that a granting of the defendant's request would necessarily delay the trial of the case. The motion to extend the discovery deadline was denied by the hearing officer on March 6, 1992.
On March 11, 1992, the defendants filed still another motion to supplement the pre-hearing questionnaire to include the testimony of a "newly discovered fact witness, Ricky Pustiano." Plaintiff again opposed the granting of the motion arguing that he would be unable to conduct any discovery of the witness and that he did not know what this witness would say.
The hearing on plaintiff's claim was finally held on March 12, 1992. At the trial of the case the hearing officer again refused to allow the introduction of the medical reports or testimony of any of the witnesses which defendants sought to call. He did, however, allow the defendant to make a proffer of the information which was excluded.
Defendants argue that because the original hearing date was continued to March 12, 1992, the plaintiff had sufficient time to conduct discovery and prepare to rebut the testimony of these witnesses. However, the burden of proving that the hearing officer abused his discretion by denying defendants' requests to modify the pre-trial order rests with the defendants. Given the fact that the defendants failed to articulate good reasons for waiting so long to have the plaintiff examined, we cannot say that the hearing officer abused his broad discretion in refusing to modify the pre-hearing order to allow the excluded testimony and/or medical reports.
However, our review of the record leads us to conclude that the hearing officer abused its discretion by not allowing the defendants to call Ricky Pustiano. While this witness was indeed a surprise witness, there was clearly no way the defendants could have known prior to March 5, 1992 that this witness had relevant information concerning plaintiff's claim of injury. For this reason, the defendants articulated good reasons for failing to list this witness on the pre-hearing questionnaire.
Ricky Pustiano was apparently an employee of the defendants who was working on the job with the plaintiff on the date that the plaintiff was allegedly injured. This witness allegedly heard the plaintiff state that he did not know if he could work that day since he had a bad back. He later allegedly heard the plaintiff ask if the workers could get worker's compensation if they were injured on the job. However, he did not become aware of the fact that the plaintiff had actually filed a claim until *332 after the February 27, 1992 hearing wherein the original trial was continued. On or about March 5, 1992 he overheard Mr. John Maus mention that the hearing on plaintiff's claim had been continued. At that time Mr. Pustiano allegedly informed Mr. Maus of the remarks made by the plaintiff. This testimony may not necessarily have been dispositive of the issue of whether the plaintiff was entitled to benefits as preexisting conditions can be covered under the worker's compensation Act. However, the testimony is certainly relevant to plaintiff's credibility where plaintiff specifically denied any previous problems and where plaintiff sought no immediate medical treatment after the alleged accident. Assuming that the plaintiff would have been prejudiced by the admission of this evidence, the trier of fact could have granted a continuance to allow time for any rebuttal needed. Since the record contains no reasons for disallowing the testimony of Rick Pustiano and since the defendants articulated good reasons for failing to list this witness on the pre-hearing questionnaire, the hearing officer abused his discretion by failing to modify the pre-trial order to allow the defendants to introduce the testimony of this witness.
For these reasons, we conclude that, based upon the facts that existed at the time of the March 12, 1992 hearing the testimony of Mr. Ferbosses and Mr. Bill Maus, the testimony of Dr. Nutik, and the medical reports of Dr. Nutik and Dr. Voth were properly excluded. However, since the testimony of Ricky Pustiano should have been admitted, the case must be remanded for a new hearing. On remand, the Hearing Officer should allow the defendants to amend their responses to the pre-hearing questionnaire to include the testimony and documents previously excluded as admission of this evidence will no longer prejudice the plaintiff. The plaintiff is now aware of this evidence and should have sufficient time to depose these witnesses and conduct any other discovery which he believes is needed to present his case. Naylor, supra.
For the reasons herein given, the judgment of the hearing officer is reversed and the case is remanded for a new hearing.
REVERSED AND REMANDED.
NOTES
[1] Assuming that the plaintiff can establish that his injury resulted in a diminished earning capacity, he may be entitled to receive supplemental earnings benefits pursuant to the provisions of La.R.S. 23:1221(3). However, since the record is devoid of evidence to establish his wage history prior to the accident or his earning capacity since the accident, this court can not address that issue.
[2] The Employer's Report of Injury completed by the company's representative on May 28, 1990 contains the following entry: "Mr. Zanca refused drug & alcohol test and Dr. visit. He then left."
[3] These medical reports were attached to the supplemental and amending answer. Both reports stated that there was no evidence of any disc herniation.