642 So.2d 684 (1994)
Kenneth W. VERNON, Plaintiff-Appellee,
v.
WADE CORRECTIONAL INSTITUTE, Defendant-Appellant.
No. 26053-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1994.
Dissenting Opinion August 31, 1994.
Rehearing Denied September 15, 1994.
*686 Zelda Tucker, Shreveport, for appellant.
Broussard, Bolton, Halcomb & Vizzier by Dorwan G. Vizzier, Alexandria, for appellee.
Before SEXTON and BROWN, JJ., and WESTERFIELD, J. pro tem.
Dissenting Opinion of Judge Sexton August 31, 1994.
BROWN, Judge.
In this workers' compensation case, Kenneth Vernon was awarded temporary total disability benefits, psychological treatment and cognitive rehabilitation therapy and penalties and attorney fees. Defendant, Wade Correctional Institute, appeals. For the reasons set forth below, we affirm.

FACTS
Plaintiff, Kenneth Vernon, was employed as a corrections officer at Wade Correctional Institute. On April 6, 1987, Vernon fell and struck his head on a concrete floor while attempting to break up an inmate fight. Vernon was hospitalized for a week and was diagnosed as having a minor closed head injury, which produced a mild cerebral contusion and possible concussion.
On May 25, 1987, after being released without restriction by his treating physician, Dr. George Beach, Vernon returned to work. At work Vernon complained of dizziness at elevated heights and in particular while *687 climbing up a guard tower. Vernon also complained of headaches and was referred by Dr. Beach to Dr. Kenneth Gaddis, a neurologist, who diagnosed Vernon as suffering from post-traumatic migraine syndrome.
In September 1987, Vernon was put on indefinite leave because of continued complaints. Vernon began receiving workers' compensation benefits of $248.00 per week. Dr. Robert Schwendimann, a neurologist, saw Vernon in October 1987 and recommended a psychiatric evaluation because he felt that Vernon's complaints were not commensurable with the minor head injury he sustained.
After being referred for rehabilitation services, in April 1988, Vernon was hospitalized at Brentwood for a psychiatric evaluation. Dr. Paul Ware, a psychiatrist, found that Vernon's symptoms and complaints were "suspicious in terms of malingering" and that Vernon was not putting forth his best efforts.
Dr. Ware readmitted Vernon to Brentwood in October 1988 for the purpose of getting a more definitive diagnosis. At this time, Dr. Ware found evidence of a cognitive deficit. Severe impairment was noted in Vernon's immediate and remote memory, recall of general information, spatial orientation and auditory processing and retention. Dr. Ware also noted evidence that Vernon exaggerated results and exhibited a limited motivation to return to work. Dr. Ware recommended cognitive/language therapy.
Dr. James Quillin, a psychologist, performed neuropsychological tests on Vernon and noted functional problems as opposed to an organic deficit. He also found that Vernon's results were difficult to interpret and that they indicated conscious exaggeration.
Dr. Argham Naalbandian, a neurologist, examined Vernon and suggested a psychiatric evaluation because of suspected depression. This evaluation was conducted by Dr. Hugh King, whose diagnostic impression was organic mood syndrome and depression. Dr. King recommended continuation of Dr. Ware's treatment of Vernon, to which suggestion Dr. Naalbandian concurred. Dr. King also suggested that Vernon be considered for vocational rehabilitation.
Dr. Warren Long, a neurosurgeon, examined Vernon in May 1989. Dr. Long noted that Vernon exhibited post-concussion syndrome in the chronic pain stage and that he had psychosocial problems with adjustment. Dr. Long also felt that there was nothing that would prevent Vernon from doing any type of work "comparative with his low I.Q." and opined that Vernon was exaggerating his condition.
Because of continued complaints of headaches, in September 1989, Dr. Ronald Goebel conducted neuropsychological tests on Vernon. Dr. Goebel found evidence of organic brain impairment and depression, as well as indications that Vernon was consciously exaggerating some of his condition. Dr. Goebel recommended at least a year of cognitive rehabilitation and Dr. Ware concurred.
In February 1990, Dr. Ware discussed Vernon with Dr. Goebel, who felt that Vernon did not have the cognitive ability to return to employment at that time. Dr. Ware concluded that Vernon appeared to be permanently disabled.
On February 15, 1990, defendant's vocational rehabilitation expert, Ken Brister, advised that vocational involvement was not warranted based upon his conclusion that Vernon was permanently disabled.
Psychiatrist, Dr. James Phillips, opined that a rehabilitation program should be considered, although even with rehabilitation, the prognosis was poor, given Vernon's difficulty concentrating, remembering and learning.
Defendant's claim adjuster, David Rood, began gathering information to justify the recommended cognitive rehabilitation treatment. Pending determination of whether such treatment should be authorized, defendant received information that Vernon was performing some activities that were inconsistent with his brain injury. Vernon was placed under surveillance and was observed working as a salesman and delivery man at a furniture store in Arcadia, Louisiana.
Vernon was notified in January 1991 that his weekly compensation benefits had been terminated, though his medical benefits would continue, based upon a review of *688 current medical reports that indicated he was capable of functioning in a work environment performing medium duty work that required only a high school education. (Emphasis added). No mention was made of the information resulting from the surveillance.
Vernon filed a workers' compensation claim on March 6, 1991. Dr. Goebel reevaluated plaintiff on December 10, 1991. According to Dr. Goebel, Vernon showed significant improvement in several areas. However, due to inconsistent and abnormal results, which indicated malingering and deliberate attempts to do poorly, Dr. Goebel opined that Vernon's impairment was mild to moderate and that his problems were emotional and behavioral in nature. Should it be determined that Vernon was not malingering, or that he was only exaggerating a little, Dr. Goebel felt that he would benefit from cognitive rehabilitation and psychiatric treatment.
Trial was held and the hearing officer rendered judgment on February 19, 1993, awarding Vernon past and future temporary total disability benefits, penalties and attorney fees. The hearing officer also made an award of cognitive rehabilitation and psychological therapy. From this adverse judgment, Wade Correctional Institute has appealed.

DISCUSSION

Admissibility of Evidence
At the close of plaintiff's case-in-chief, defendant, Wade Correctional Institute, began calling witnesses who had not been listed in its pretrial statement. These witnesses included the claims investigator who made the decision to terminate plaintiff's benefits in December 1990, an insurance investigator for the State of Louisiana, a private investigator, two members of plaintiff's church, and plaintiff's wife's employer. Plaintiff's counsel objected, noting that he did not receive any advance notification of these witnesses. Furthermore, the testimony defendant was seeking to introduce was neither rebuttal nor impeachment evidence as it addressed the primary issues in dispute, disability and earning capacity. Therefore, this evidence should have been offered as part of defendant's case-in-chief.
The hearing officer sustained plaintiff's objections and directed that no rebuttal evidence would be allowed at that stage of the trial. Defense counsel was allowed to continue, though only for purposes of impeachment.
However, after the testimony of only two witnesses, the hearing officer made the following comments:
... The point is that the witnesses in your [defendant's] case-in-chief have to be listed on your pretrial statement. You listed no witnesses. You have no witnesses on your case-in-chief. So you are calling these people in as rebuttal witnesses when they are, in fact, witnesses on your case-in-chief....
I am saying that you cannot disguise your case-in-chief as rebuttal evidence....
[W]hat you're doing is improper.... [T]hese people should have been listed on your pretrial statement because they address issues which have been in dispute since the foundation of this claim....
You can't wait until the claimant comes into court and makes a statement, which you knew he was going to make, and then say you're presenting your defense as rebuttal evidence.
The testimony of the two witnesses who had testified was not considered but was allowed in the record as a proffer. Defendant was also allowed to proffer the testimony of its remaining witnesses. During the proffer, plaintiff's counsel conducted only a limited cross examination of the witnesses, because of lack of notice and insufficient time to prepare.
LSA-CCP Article 1551 gives a court wide discretion to provide for implementation of a pretrial order and to insure that the terms of the pretrial order are enforced. The theory inherent in pretrial procedure is the avoidance of surprise and the allowance of the orderly disposition of the case. Gilcrease v. Gilcrease, 438 So.2d 658 (La.App. 2d Cir.1983), writ denied, 442 So.2d 461 (La.1983); Zanca v. Exhibition Contractors Company, 614 So.2d 325 (La.App. 4th Cir.1993); Offord v. Holloway Construction *689 Co., 567 So.2d 690 (La.App. 3d Cir.1990). The pretrial order (statement) controls the subsequent course of the action, though it can be modified at trial to prevent substantial injustice. Offord, supra. As noted by the Fourth Circuit in Zanca, the need for an orderly disposition is particularly important in workers' compensation cases. The same considerations underlying cases in a district court are applicable. Zanca, 614 So.2d at 329.
The trier of fact is given broad discretion to determine whether or not to modify a pretrial order. Ware v. Medical Protective Insurance Co., 621 So.2d 54 (La. App. 2d Cir.1993), writ denied, 629 So.2d 354 (La.1993); Tassin v. Cigna Insurance Co., 583 So.2d 1222 (La.App. 3d Cir.1991). This discretion is controlled by the principle that it must be exercised to prevent substantial injustice to the parties who have relied on the pretrial rulings or agreements and structured the preparation and presentation of their cases accordingly. Wells v. Gillette, 620 So.2d 301 (La.App. 4th Cir.1993), writ denied, 629 So.2d 396 (La.1993); Naylor v. Louisiana Department of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writs denied, 429 So.2d 127, 134 (La.1983). Absent an abuse of discretion, the trier of fact's decision will be upheld. Zanca, supra.
The instant case is factually similar to Offord, supra. In Offord, the plaintiff testified about his condition and disability. Defense counsel did not ask plaintiff any specific questions. Instead, during defendants' case-in-chief, defense counsel called a private investigator and attempted to introduce videotapes allegedly depicting plaintiff doing things he said he was unable to do. An objection was made by plaintiff's counsel and the trial judge refused to allow the evidence, though he did allow a proffer for the record. The trial judge noted that the evidence defendants sought to introduce was not impeachment evidence, but was direct evidence of plaintiff's condition. Defendants failed to list either the investigator or the videotapes in the pretrial order. The trial court refused to modify the pretrial order, noting that defendants had ample time to amend their witness and exhibit list before trial. The appellate court found no abuse of the trial court's discretion in excluding the evidence.
We likewise find no abuse of the hearing officer's discretion in refusing to allow the evidence offered by defendant in the instant case. Defendant filed its pretrial statement on October 16, 1991. Trial of the matter was not until February 6, 1992. Because the substance of the proffered testimony related to known events that formed the true basis of defendant's decision to terminate plaintiff's benefits in December 1990, the witnesses' names should have been included in the original pretrial statement and certainly could have been furnished prior to trial by an amendment.

Disability and Duration
Defendant asserts that the hearing officer erred in finding that plaintiff was entitled to temporary total disability benefits.
The finding of disability in a workers' compensation case is a legal rather than a purely medical determination. Manson v. City of Shreveport, 577 So.2d 1167 (La.App. 2d Cir.1991), writ denied, 580 So.2d 928 (La. 1991). The determination that a claimant is disabled is made by reference to the totality of the evidence, including both lay and medical testimony. Manson, supra.
Whether or not a claimant is temporarily totally disabled is a question of fact to be determined by the hearing officer. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993); Landry v. Central Industries, Inc., 592 So.2d 478 (La.App. 3d Cir.1991), writ denied, 593 So.2d 381 (La.1992). Once the hearing officer has made factual findings as to disability and length thereof in a workers' compensation case, those determinations are entitled to great weight and are not to be disturbed absent a showing of manifest error. Bradley v. Justiss Oil Co., 618 So.2d 646 (La.App. 2d Cir.1993); Scott v. Central Industries, Inc., 602 So.2d 201 (La.App. 3d Cir.1992).
Plaintiff was injured on April 6, 1987, two years before LSA-R.S. 23:1221 was significantly amended. The rights and duties of the parties are fixed according to the law in effect at the time of injury. Bruno v. *690 Harbert International, Inc., 593 So.2d 357 (La.1992); Bradley, supra; Hill v. L.J. Earnest, Inc., 568 So.2d 146 (La.App. 2d Cir. 1990), writ denied, 571 So.2d 652 (La.1990). Therefore, LSA-R.S. 23:1221 prior to its amendment in 1989 is applicable to this case. As noted by the Third Circuit in Masters v. Scogin Auto Parts, Inc., 625 So.2d 319 (La. App. 3d Cir.1993), writ denied, 631 So.2d 450 (La.1994), Act 454 of 1989 heightened the claimant's burden of proof and eliminated consideration of the odd lot, sheltered employment and working in pain doctrines. These comprehensive changes are substantive and cannot be retroactively applied. See also St. Paul Fire and Marine Insurance Co. v. Smith, 609 So.2d 809 (La.1992).
At the time of plaintiff's injury, LSA-R.S. 23:1221(1) provided:
For any injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
Prior to the 1989 amendment to LSA-R.S. 23:1221, plaintiff's burden of proof in a claim for temporary total disability benefits was by a preponderance of the evidence. Masters, supra; Tanner v. International Maintenance Corp., 602 So.2d 1133 (La.App. 1st Cir.1992).
The hearing officer found that Vernon was entitled to temporary total disability benefits from the date his benefits were terminated, December 20, 1990, until completion of his recommended medical treatment. In addition to the medical evidence, the hearing officer considered the testimony of Vernon, his wife and a former co-worker. Kenneth Vernon testified that after the accident, he experienced headaches, dizzy spells and "crawling feelings" in his head. Additionally, he had problems thinking, reading, remembering and doing math. Vernon testified that he had not returned to work, nor had he earned any wages since he stopped working at Wade Correctional Institute. Vernon expressed willingness to participate in the cognitive rehabilitation therapy.
Vernon's wife testified to her husband's loss of memory following his accident. Mrs. Vernon stated that Vernon also experienced problems with reading and writing.
Stephen Murphy, who was also a corrections sergeant at Wade, stated that the position required the ability to read, write and do math. Following the accident, Murphy noted changes in Vernon's personality and witnessed his problems with memory, reading and writing.
A reviewing court must always keep in mind that if the trial court's findings are reasonable in light of the record reviewed in its entirety, it may not reverse even if convinced that had it been the trier of fact, it would have weighed the evidence differently. This well-settled principle of review is based on the better capacity of the trier of fact to evaluate live witnesses and the proper allocation of functions between trial and appellate courts. Thus, when two permissible views of the evidence exist, the trial court's choice cannot be manifestly erroneous or clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). After a thorough review of the record, we are unable to say that the hearing officer's determination that plaintiff is temporarily totally disabled is manifestly erroneous.
Defendant further contends that as the evidence establishes that plaintiff is able to return to work, the hearing officer erred in awarding rehabilitation services to him. This argument is without merit. The recommended psychiatric treatment and cognitive rehabilitation therapy do not fall within the ambit of vocational rehabilitation, but are more properly classified as medical treatment.
Defendant is obligated to provide medical and psychological care to plaintiff as such care becomes necessary. LSA-R.S. 23:1203(A); Masters, supra. The record contains sufficient evidence to substantiate the hearing officer's determination that Vernon *691 is entitled to psychiatric treatment and cognitive rehabilitation therapy.

Penalties and Attorney Fees
An assessment of penalties for nonpayment of compensation is proper unless nonpayment results from conditions over which the employer or insurer had no control or unless the employee's right to such benefits has been reasonably controverted. LSA-R.S. 23:1201(E); Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2d Cir. 1991). A claimant's right to benefits is reasonably controverted if the factual and medical information possessed by the employer and insurer reasonably counters that of the claimant. Holmes v. International Paper Co., 559 So.2d 970 (La.App. 2d Cir.1990).
An award of attorney fees is appropriate when the employer and/or insurer has acted arbitrarily, capriciously or without probable cause in failing to pay workers' compensation benefits. LSA-R.S. 23:1201.2. A determination of whether a denial of compensation benefits is arbitrary, capricious or without probable cause depends primarily on the facts existing and known at the time that benefits are denied. Holmes, supra.
The determination of whether an employer and/or insurer should be cast with penalties and attorney fees is essentially a question of fact and the trial court's finding must not be disturbed on appeal absent manifest error. Bradley, supra; McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2d Cir.1991); Jim Walter Homes v. Lewis, 544 So.2d 485 (La.App. 2d Cir.1989).
Defendant contends that the hearing officer erred in awarding plaintiff penalties of 12% on all past-due amounts and attorney fees in the amount of $2,500.
According to defendant's notice to Vernon, benefits were terminated based upon medical reports; however, both Dr. Paul Ware, Vernon's treating psychiatrist, and Dr. Ronald Goebel found that Vernon was in need of further treatment. Thus, the hearing officer determined that defendant was arbitrary and capricious in ending Vernon's benefits and refusing to provide the recommended psychiatric treatment and cognitive rehabilitation therapy.
We cannot say that this finding is manifestly erroneous.

CONCLUSION
For the reasons set forth above, the hearing officer's judgment is affirmed.
SEXTON, J., dissents and will assign reasons.
SEXTON, Judge, dissenting.
A significant issue in this case is whether plaintiff's burden is by preponderance of the evidence or whether it is by clear and convincing evidence. This accident occurred April 6, 1987. The trial occurred February 6, 1992. At the time of the accident, the standard of proof of temporary total disability was by preponderance of the evidence. Johnson v. Monroe Pulpwood Company, Inc., 505 So.2d 862 (La.App.2d Cir.1987). Act 454 of 1989 changed that standard to clear and convincing evidence. See LSA-R.S. 23:1221(1)(c). Further, that same act created LSA-R.S. 23:1021(7)(c), which states that such a mental injury caused by physical injury is not compensable unless demonstrated by clear and convincing evidence.
Based on Creed v. Avondale Industries, Inc., 608 So.2d 226 (La.App. 5th Cir.1992), and Ardoin v. Hartford Accident Indemnity Co., 360 So.2d 1331 (La.1978), I believe these changes in the standard of proof are procedural and thus retroactive.
There is extensive indication in the medical evidence that the complainant was exaggerating his symptoms, and several doctors thought that he might be malingering. As I appreciate the medical evidence, the primary recommendation for cognitive therapy came from Dr. Goebel, a psychologist, who conducted tests for Dr. Ware. Dr. Ware simply endorsed the recommendation of Dr. Goebel. When pressed on the question of plaintiff's disability and the need for therapy, Dr. Goebel said that it was based on "a hunch about this matter." Dr. Goebel further explained that his recommendation was based on the fact that although he had doubt as to the true nature of the plaintiff's condition, he *692 thought it best to err on the side of therapy. It is therefore clear to me that if the change in the standard of proof is retroactive, this plaintiff has not shown his disability by clear and convincing evidence.
Further, I respectfully disagree with the majority on the evidentiary issue. If the proffered evidence is considered, it seems to me that plaintiff cannot prevail under either standard. I concede that the evidentiary issue is a close and difficult question and that Offord v. Holloway Construction Company, 567 So.2d 690 (La.App. 3d Cir.1990), is directly on point. I prefer the contrary view of Swafford v. LaFleur, 576 So.2d 57 (La.App. 1st Cir.1990), writ denied, 580 So.2d 923 (La. 1991), which I also suggest is directly on point.
I think it is particularly important to remember that in this case the majority of the medical evidence did little to support the plaintiff's claims. The first real support came from Dr. Goebel who saw the patient on December 27, 1989, some two years and eight months after the accident. Dr. Ware, who had previously discharged the plaintiff on March 27, 1989, noting his conscious exaggeration and very unusual symptoms, for some reason endorsed Dr. Goebel's assessment in a brief note. It is interesting to note that Dr. Goebel's examination was probably the defendant's fifth psychological workup. He had already been seen by four neurologists, two neurosurgeons, two general practitioners, and at least one psychiatrist.
The reason I believe this evidence was pertinent rebuttal evidence was that during direct examination plaintiff denied doing housework and yard work. He also denied working at Livingston Furniture and stated his only purpose in going there was to visit his wife. He stated that he had no businesses and had nothing to do with his sister's cafe in Grambling. He further indicated that Margaret Champion was operating the Snoopy's business next to his house rent-free in a building which he owned.
More importantly, on numerous psychological evaluations, a consistent theme was plaintiff's inability to read at a sufficiently significant level to undergo many tests, his inability to properly reason, and his unusual responses to various questions. Thus, the doctors wondered about his cognitive ability. Also, plaintiff had testified that he had difficulty reading and performing his duties as deacon of his church.
Defendant's proffered evidence included the manager of Lewis Furniture who said that plaintiff helped his wife with her duties there including collections and sales. Two witnesses from the church testified that they knew the plaintiff well and that they had observed him during 1990-91 counting money, leading prayer, and reading scriptures. Also excluded was testimony of Mr. Wells, the manager of Wells Vending Service, who stated that in dealing with Snoopy's (the business allegedly run by Margaret Champion on the plaintiff's property) he had dealt only with Mr. Vernon. Specifically, he said that all orders and changes came from Mr. Vernon.
I recognize that my view may conflict with the orderly trial process. It is, however, consistent with the purpose of the trial, which is to obtain the truth. This excluded evidence confirms the opinion of all those doctors who were convinced the plaintiff was exaggerating and thought that he might be malingering. This evidence directly contradicts the plaintiff's case and I believe should have been considered.
In any event, I am at an absolute loss to understand how the majority can affirm penalties and attorney fees in this case. Defendant's medical information consistently indicated exaggeration and suspicion of malingering. Dr. Ware had the plaintiff under his care during two separate hospitalizations totaling thirteen days. He found nothing after extensive psychological and psychiatric testing. He released this plaintiff on March 27, 1989, noting "unusual symptoms" and "conscious exaggeration." This action was consistent with all of the other medical information which the defendants had to that point. It is only after Dr. Goebel saw the plaintiff on December 27, 1989 that there is any indication that the plaintiff may have a continuing problem. As I have already noted, however, Dr. Goebel was less than certain about that.
*693 When this medical evidence is coupled with the extensive surveillance evidence, which was consistent with the medical impressions that the defendant was exaggerating and malingering, I suggest the defendant was well within their province to terminate benefits. Whether the surveillance information is later admissible at trial or not has nothing to do with the fact that this information was properly in the possession of the defendant and it had the right to use it to evaluate the plaintiff's entitlement to benefits. I therefore believe the defendant was clearly justified in discontinuing benefits.
I respectfully dissent.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, VICTORY, BROWN, JJ. and LOUIS WESTERFIELD, J. Pro Tem.
Rehearing denied.