I WILLIAMS, J.,
dissenting.
I respectfully dissent.
A court of appeal should not set aside a finding of fact by the workers’ compensation judge in the absence of manifest error. See Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. To reverse a fact finder’s determination, the reviewing court must conclude that a reasonable factual basis for that finding does not exist in the record. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
As stated by the majority, the employee has the burden of establishing his disability and its causal relation with the employment by a preponderance of the evidence. Brown v. Manville Forest Products Corp., 565 So.2d 496 (La.App. 2d Cir.1990). A worker’s testimony alone may be sufficient to discharge the burden of proof, provided the following two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimo *866 ny is corroborated by the circumstances following the alleged incident. Corroboration of the worker’s testimony may be provided by the testimony of his spouse, fellow workers or friends. Cook v. Kaldi’s Coffee House, 97-0979 (La.App. 4th Cir.1/28/98), 706 So.2d 1052.
In order for the employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. A claimant’s disability is presumed to have resulted from an accident or on-the-job injury if before the accident the injured person was not impaired, but commencing with the accident, the symptoms of the disabling condition appeared. There must be sufficient medical evidence to show a reasonable possibility of a causal connection between the 12accident and the disabling condition. Qualls v. Stone Container Corporation, 29,794 (La.App.2d Cir.9/24/97), 699 So.2d 1137. Once the disabled employee establishes the presumption of a causal relationship, the defendant assumes the burden of proving the absence of a causal connection between the accident and the injury. Ceasar v. Crispy Cajun Restaurant, supra.
In the present case, Dr. Bryan L. Roberts, a toxicologist, conducted tests to determine the emission levels of the chemicals used at the Sawyer Industrial plant. Dr. Roberts reported that workers were exposed to relatively high concentrations of styrene vapors during the lay-up operations, the same type of work performed by the claimant.
Several former employees testified regarding the work conditions existing at the time of claimant’s employment at Sawyer Industrial. Guy Owens, who was employed at Sawyer Industrial from 1985 until February 1, 1990, testified that he worked with MEKP, cobalt, styrene and resin and that he experienced queasiness and headaches while employed at Sawyer Industrial. Larry Dunn was employed at Sawyer Industrial from 1989 until 1993. Dunn testified that he experienced blurred vision, headaches and nausea during layups and that he witnessed co-workers lie on the floor because of dizziness while performing the lay-ups. He also testified that his symptoms included internal bleeding, shortness of breath and sinus problems. Paul David McCarty testified that he was employed at Sawyer Industrial for approximately three years, beginning in April 1991, and that he experienced dizziness, nausea and a weak stomach while doing lay-ups.
There was conflicting medical evidence regarding the cause of claimant’s medical condition. However, the evidence presented does not indicate that the claimant had suffered from any type of brain impairment, damage to his nervous system or psychological deficits prior to his employment at Sawyer Industrial.
Both Dr. Callender and Dr. Goebel concluded that the claimant had suffered l.gbrain impairment. Dr. Callender and the toxicologist, Dr. Irvin, opined that the claimant’s medical problems were consistent with excessive styrene exposure. They further agreed that the evidence of damage to only one side of the brain was not a controlling factor in identifying styrene as the etiology of the damage.
The evidence in the record establishes that the claimant was exposed to toxic chemicals as a result of his employment at Sawyer Industrial. The claimant presented testimony regarding psychological test results which indicated that he has a mild degree of brain dysfunction. In addition, claimant produced expert testimony by Dr. Callender, who diagnosed the claimant as having toxic encephalopathy and opined that this condition was specifically related to his exposure to multiple organic solvents during his employment.
The majority notes that Dr. Callender’s opinion is contradicted by that of Dr. Ronald Goebel, who opined that claimant’s brain impairment was likely not related to his exposure to toxic chemicals, because claimant’s brain dysfunction was only man *867 ifested in the right cerebral hemisphere. The majority concludes that this opinion refutes the finding that claimant’s impairment is related to his styrene exposure. However, such a conclusion is not warranted in light of Dr. Irvin’s testimony, who explained that although exposure to styrene results in diffuse damage to cells throughout the brain, a patient may exhibit only localized impairment because of the differing rates of repair in damaged regions of the brain.
A reasonable reading of Dr. Irvin’s testimony demonstrates that evidence of localized brain impairment does not necessarily refute the expert opinion that claimant’s brain dysfunction is causally related to his employment exposure to toxic chemicals. Moreover, the workers’ compensation judge could reasonably choose to give greater weight to the opinion of Dr. Cal-lender, a board certified physician, and relatively less weight to the views of Dr. Goebel, a psychologist who is not a medical doctor. The majority errs in substituting its evaluation of the |4evidence for that of the workers’ compensation judge.
After reviewing the expert testimony and the evidence, I conclude that this record provides a reasonable factual basis to support the workers’ compensation judge’s finding that the claimant proved by a preponderance of the evidence that he suffers from a disability which was caused by exposure to chemicals during the course of his employment. Therefore, I cannot say the workers’ compensation judge committed manifest error.
Having reached this conclusion, it is necessary to discuss the issue of permanent and total disability. In order to be found permanently and totally disabled, the claimant must prove by clear and convincing evidence that he is physically unable to engage in any employment or self-employment. Knotts v. Snelling Temporaries, supra.
Here, Dr. Callander testified that the claimant was permanently and totally disabled. However, he also concluded that the claimant was capable of performing a sedentary job. Although two of the expert witnesses felt claimant should undergo a psychiatric evaluation, none of the medical evidence adduced during the trial indicated the claimant had any physical limitations that would prevent him from engaging in some type of employment or self-employment. Thus, the workers’ compensation judge was clearly wrong in concluding that the claimant was permanently and totally disabled pursuant to LSA-R.S. 23:1221(l)(c).
After a thorough review of the record, I must conclude that claimant is entitled to supplemental earnings benefits, which are proper where a claimant is able to work, but unable to earn wages equal to ninety percent or' more of the wages the claimant earned at the time of injury. Mitchell v. Abbeville General Hospital, supra. To qualify for supplemental earnings benefits, a plaintiff is required to prove by a preponderance of the evidence that a work-related injury resulted in the inability to earn 90% or more of the pre-injury wages. LSA-R.S. |K23:1221(3)(a); Banks v. Industrial Roofing & Sheet Metal Works, Inc.; 96-2840 (La.7/1/97), 696 So.2d 551. The purpose of supplemental earnings benefits is to compensate the injured employee for the wage-earning capacity he has lost as a result of his accident. Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra.
Once the claimant’s burden is met, the burden shifts to the employer who, in order to defeat the employee’s claim for supplemental earnings benefits or establish the employee’s earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic region. Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra.
In order to recover disability benefits for any mental injury caused by a work- *868 related injury, a claimant must demonstrate the injury by clear and convincing evidence. LSA-R.S. 23:1021(7); Nichols v. Harmony Industrials, supra. Pursuant to R.S. 23:1021(7)(d), no mental injury shall be compensable unless it is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.
Dr. Goebel, a licensed psychologist, diagnosed the claimant as having a mild degree of organic brain impairment. Dr. Goebel noted that the claimant’s emotional status was clearly abnormal and that there was a large difference between his verbal I.Q. and his performance I.Q., which could signal lateralized brain impairment. Dr. Goebel opined that the claimant’s psychological limitations disable him from working.
Our law requires that the claimant’s mental condition be diagnosed by a | ^psychologist or psychiatrist. Based on Dr. Goebel’s diagnosis that the claimant suffers from a mild brain dysfunction, and that he also has disabling psychological limitations, the claimant is entitled to recover supplemental earnings benefits.
Further, although the record discloses evidence indicating that claimant could perform a sedentary job, the defendants failed to introduce any evidence of a job available to the claimant as required by LSA-R.S. 23:1221(3). Thus, the claimant is entitled to supplemental earnings benefits in the amount of $206.67, based on a zero discount, beginning on August 27, 1991, for a period not to exceed 520 weeks. Joyner v. Davison Transport, Inc., 28,880 (La.App.2d Cir.1/22/97), 688 So.2d 623.

Penalties and Attorney Fees

The purpose of the penalty provision of this statute is to discourage an attitude of indifference toward the injured employee. A determination of whether a defendant should be cast with penalties is essentially a question of fact. Joyner v. Davison Transport, Inc., supra; Vernon v. Wade Correctional Institute, 26,053 (La.App.2d Cir.8/19/94), 642 So.2d 684.
Penalties may be assessed for nonpayment of compensation unless the employer or his insurer has reasonably controverted the employee’s right to compensation or medical benefits. To reasonably controvert the employee’s claim, the employer or his insurer must have sufficient factual or medical information to reasonably counter the factual and medical information presented by the claimant. Woods v. Ryan Chevrolet, Inc., 30,206 (La.App.2d Cir.2/25/98), 709 So.2d 251.
Attorney fees may be awarded when an employer’s failure to pay a claim is arbitrary or capricious. LSA-R.S. 23:1201.2. Whether or not a termination of benefits is arbitrary, capricious, or without probable cause primarily depends on the facts known to the employer or insurer at the time of its action. Joyner v. Davison Transport, Inc., supra; Thomas v. Union Tank Co., 94-778 (La.App. 3rd Cir.12/7/94), 647 So.2d 581.
At the time benefits were denied, the defendants were aware of the toxicologist’s report that the employees, including the claimant, had been exposed to high levels of toxic chemicals. As early as October 3, 1991, Dr. Joyner informed the parties that “a history of chemical injury could be significant for the claimant.” Further, contrary to the defendants’ assertions in brief, the claimant notified Sawyer Industrial by letter, as early as March 11, 1992, that claimant was requesting disability benefits. The defendants failed to prove that they investigated promptly to ascertain the validity of the claim or that the claim was reasonably controverted.
It is incumbent upon the insurer to make reasonable efforts to ascertain the employee’s exact medical condition when benefits are terminated. Woods v. Ryan, supra. Here, at least two of the medical experts recommended a psychiatric evaluation in order to determine the precise na *869 ture of claimant’s condition. The defendants have not presented any plausible explanation of why the claimant was not evaluated by a psychiatrist.
Based on this record, I cannot say the workers’ compensation judge was clearly wrong in finding that the defendants failed to reasonably controvert the claimant’s right to compensation benefits. Therefore, I would affirm the workers’ compensation judge’s award of penalties and attorney fees, but amend the judgment to reduce the amounts awarded. I would assess a penalty of $2,000 and award attorney fees of $10,000, which is reasonable under the circumstances of this case. However, I agree with the majority that an additional award for legal work performed on appeal is not warranted. The defendants have obtained relief on appeal. Thus, the claimant is not entitled to an additional attorney fee.

Expert Witness Fees

Pursuant to LSA-R.S. 13:3666(B), expert fees are to be taxed as costs. IsHowever, LSA-R.S. 23:1317 governs the fíxing of expert fees and provides that such fees shall not bé allowed unless fixed in the judgment. Further, LSA-C.C.P. art. 1951 does not permit substantive amendments to judgments unless they are for the purpose of correcting errors of calculation.
In the instant case, the expert fees were not fixed in the final judgment. In the judgment on the claimant’s rule to show cause, the workers’ compensation judge stated, “[T]he court signed the original judgment with the intent that a contradictory hearing be held thereafter to determine a reasonable amount to assess for expert fees.” However, the judge did not make any reference in the original judgment to a subsequent fixing or assessment of expert witness fees. Therefore, I agree with the majority that the claimant is barred from collecting these fees.
CONCLUSION
For the foregoing reasons, I would reverse that part of the judgment awarding permanent and total disability benefits and taxing expert fees as costs. I would also render judgment awarding the claimant supplemental earnings benefits, reduced by a credit for unemployment benefits paid to the claimant. Finally, I would amend the judgment to assess penalties in the amount of $2,000 and attorney fees in the amount of $10,000.