STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-1105

PHYLLIS GREEN

VERSUS

EDWIN SPRIGGS, ET AL.

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 75,419
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Michael G. Sullivan, and Glenn B. Gremillion, Judges.

**AFFIRMED AS AMENDED.**

**Jarvis J. Claiborne**
**P. O. Box 1033**
**Opelousas, LA 70571-1033**
**(337) 948-4336**
**Counsel for Plaintiff/Appellant:**
    **Phyllis Green**

**Geraldine Fontenot Roberts**
**2014 W. Pinhook Rd., Suite #701**
**Lafayette, LA 70508**
**(337) 235-7888**
**Counsel for Defendants/Appellees:**
    **Fidelity & Deposit Cos. of Maryland**
    **Edwin Spriggs**

**Pride Justin Doran**
**Williams & Doran, PLLC**
**1313 Lafayette Street**
**Lafayette, LA 70502**
**(337) 235-3989**
**Counsel for Defendants/Appellees:**
  **Fidelity & Deposit Cos. of Maryland**
  **Edwin Spriggs**

**J. Ricky LaFleur**
**120 South State Street**
**Abbeville, LA 70510**
**(337) 893-2030**
**Counsel for Intervenor/Appellee:**
  **J. Ricky LaFleur**

GREMILLION, Judge.

The plaintiff, Phyllis Green, appeals rulings made by the trial court and damage awards and findings of fault made by the jury in relation to an automobile accident. The trial court excluded Green's submissions of evidence finding that both were untimely. Further, Green argues that the jury erred by awarding her nothing for loss of enjoyment of life, insufficient damages for permanent disfigurement, and in finding her twenty-five percent at fault in causing the accident. We affirm the judgment as amended.

## FACTS

On August 24, 2000, Green was traveling west on the two-lane Louisiana Highway 14 in Vermilion Parish, just outside of Abbeville, Louisiana. Ahead of her was a vehicle driven by Edwin Spriggs. Spriggs was test-driving a vehicle owned by Gulf State Bank and insured by the Fidelity and Deposit Companies (F&D). Although the testimony is contradictory as to what exactly occurred, Green attempted to pass Spriggs just as he executed a left turn into a private driveway. The resulting impact caused Green's vehicle to flip several times before coming to rest headed in an easterly direction. Spriggs' vehicle was spun around by the impact and also came to rest headed east.

Subsequently, Green filed suit against Spriggs and F&D (referred to collectively as Spriggs) seeking damages for injuries she suffered in the accident. Spriggs answered the petition and requested a trial by jury. The matter proceeded to a jury trial, after which it awarded Green $49,998.32 in damages, but found her

1

twenty-five percent at fault in causing the accident. Judgment was rendered in this matter on November 12, 2004. This appeal by Green followed.

## ISSUES

On appeal, Green raises four assignments of error. She claims that the trial court erred in excluding the testimony of Dr. Kenneth Bouillion, a psychologist, and in excluding photographs of her scars caused by broken glass. She further argues that the jury erred in failing to award her damages for loss of enjoyment of life and sufficient damages for the permanent disfigurement she suffered as a result of the accident. Finally, she argues that the jury erred in finding her twenty-five percent at fault in causing the accident.

## PRELIMINARY RULINGS

In her first two assignments of error, Green argues that the trial court erred in excluding evidence she would have presented during her case-in-chief. First, she argues that the trial court erred in excluding a report by Dr. Bouillion, pertaining to the mental anguish she suffered due to disfiguring scars caused by glass broken during the accident. Next, she claims that the trial court erred in excluding all photographs of her scarring taken after September 2001, including photographs taken three days prior to the start of trial.

The trial court excluded both the report and the photographs as being presented untimely. Although Green's counsel informed Spriggs of his intention to add Dr. Bouillion to the previously submitted witness list, via a March 24, 2004 letter, and included his report as an exhibit in his pre-trial memorandum of March 30, 2004, he did not actually receive Dr. Bouillion's report until April 1, 2004. A copy of that

2

report was faxed to Spriggs' counsel that same day. The excluded photographs were taken on December 31, 2001, June 3, 2002, March 24, 2003, and April 2, 2004, and were presented by Green's counsel for submission into evidence on April 6, 2004, the second day of the trial. However, none of these photographs were ever provided to Spriggs prior to trial.

With regard to Dr. Bouillion's report, Green argues that it was furnished to Spriggs within the sixty-day deadline provided by the trial court's scheduling order. Although a copy of the trial court's order was not included in the record, a standard scheduling order was obtained from the trial court, which provides for the "**FINAL EXCHANGE OF COPIES OF REPORTS OF TREATING PHYSICIANS**" at sixty days prior to trial.

It should be noted that trial in this matter was originally scheduled for January 26, 2004. On January 14, 2004, Green filed a Motion to Withdraw and Substitute Counsel of Record so that she could substitute her current counsel for her original counsel. On January 16, 2004, the trial court granted her motion and continued the trial in this matter until April 5, 2004. The trial court's scheduling order was evidently sent out on February 6, 2004, which required the exchange of reports by treating physicians at sixty days prior to trial. On March 31, 2004, Green filed her pre-trial memorandum, which included Dr. Bouillion's report as an exhibit. A copy of this report was sent to Spriggs on April 1, 2004.

Green argues that the report was sent to Spriggs within the sixty-day deadline mandated by the trial court's scheduling order. Although Green's counsel may have submitted the report within sixty days of the trial court's February 6, 2004

3

scheduling order, we find that he has misinterpreted the order's language. The order requires the exchange of reports sixty days prior to the date of trial, not within sixty days of the order's receipt.

> La. C.C.P. art. 1551 gives a court wide discretion to provide for implementation of a pretrial order and to insure that the items of the pretrial order are enforced. The theory inherent in pretrial procedure is the avoidance of surprise and the allowance of the orderly disposition of the case. The pretrial order controls the subsequent course of action, though it can be modified at trial to prevent substantial injustice. *Vernon v. Wade Correctional Center*, 26,053 (La.App.2d Cir.8/19/94), 642 So.2d 684. The trier of fact is given broad discretion to determine whether to modify a pretrial order. This discretion is controlled by the principle that it must be exercised to prevent substantial injustice to the parties who have relied on the pretrial rulings or agreements and structured the preparation and presentation of their cases accordingly. Absent an abuse of discretion, the trier of fact's decision will be upheld. *Vernon v. Wade Correctional Center, supra.*

*Robinson v. Apria Healthcare, Inc.*, 38,438, p. 13 (La.App. 2 Cir. 5/27/04), 874 So.2d 418, 426.

In this instance, the trial court excluded Dr. Bouillion's report as its submission violated the scheduling order and because its late presentation denied Spriggs the right to depose Dr. Bouillion on its contents and the right of cross-examination during the trial. Although Green's counsel did come to this fight late, we find that he still had sufficient time to obtain a psychological evaluation of Green and to get that information to Spriggs. To allow the report into evidence would result in a substantial injustice to Spriggs for the very reasons enunciated by the trial court. Accordingly, we find that the trial court did not abuse its vast discretion in excluding Dr. Bouillion's report from evidence.

We hold likewise with regard to the excluded photographs. The trial court excluded those photographs as Green failed to provide them to Spriggs prior to

4

trial. Once again, this decision was within the trial court's discretion and we find no abuse of that discretion. Accordingly, these two assignments of error are without merit.

## DAMAGES

In her third assignment of error, Green argues that the jury awarded her insufficient damages for permanent disfigurement and erred in awarding her zero damages for loss of enjoyment of life.

A jury's award of damages is reviewed in light of the standard set out in *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994). Thus, we first must determine if the jury's award for the particular injury and its effect under the particular circumstances on this plaintiff is a clear abuse of the jury's "much discretion." *Id.* at 1260. "It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Id.* at 1261.

### *Disfigurement*

Following the accident, Green suffered scars and lesions as a result of glass particles from the windows of her vehicle which embedded in her skin. As the particles worked their way out of her body, they caused the skin to become infected and irritated, resulting in open, draining wounds, which healed into round hyper-pigmented areas. Dr. Darrell Henderson, a plastic and reconstructive surgeon, testified that approximately 400 of these were located over large areas of Green's four

5

extremities and the front of her trunk at his initial examination on September 19, 2001. He described these areas as being five to six times darker than her normal skin color. Dr. Henderson further stated that this scarring was permanent and markedly disfiguring. Although he testified that the initial scarring was related to the automobile accident, he stated that Green started developing lesions in areas where she was not initially injured; he related the cause of these to something other than the accident. However, as of June 3, 2002, he could still feel sharp little spicules of glass in her skin.

Dr. Daniel Dupree, a dermatologist, examined Green approximately three years after her accident, upon a referral by Dr. Henderson. He noted numerous oval to round, thickened hyper-pigmented areas on her arms, legs, torso, and neck. He diagnosed her with Lichen Simplex Chronicus, associated with hyper-pigmentation, and multiple cutaneous excoriations. Dr. Dupree disagreed with Dr. Henderson that these lesions were caused by embedded glass, although he did not offer an opinion as to whether she did indeed have embedded glass in her skin after the accident. He felt that the lesions were self-induced by chronic scratching, rubbing, and picking; he did not feel that they were consistent with foreign body granulomas. Dr. Dupree felt that Green's condition was caused by stress she was under from work, although he admitted that an automobile accident could result in behavior which would lead to self-induced lesions.

After reviewing the photographs taken of Green and noting the numerous hyper-pigmented areas on her extremities, we find that the jury abused its discretion by awarding only $10,000 in damages for disfiguration. In *Bonin v. Ferrellgas Inc.*,

02-1031, p. 23 (La.App. 3 Cir. 8/6/03), 855 So.2d 781, 803, *reversed in part on other grounds*, 03-3024 (La. 7/2/04), 877 So.2d 89, we defined disfigurement as "that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner." The photographs show numerous circular areas on Green's legs, arms, back, and torso, which are definitely darker than her normal skin tone and are easily discernable. As this scarring is permanent, we find that it impairs Green's appearance such that it is disfiguring. After reviewing other cases involving scarring and taking into consideration the amount of scarring found on her body, we find that the lowest amount that the jury should have awarded her is $30,000. Accordingly, the trial court's judgment is amended to award Green $30,000 in damages for disfigurement.

***Loss of Enjoyment of Life***

In *Basco v. Liberty Mutual Insurance Co.*, 05-143 (La.App. 3 Cir. 8/17/05), 909 So.2d 660, we noted that damages for loss of enjoyment of life are recoverable upon proof that a plaintiff's lifestyle has been detrimentally altered or that she was forced to give up activities as a result of her injury.

Prior to the accident, Green testified that she enjoyed fishing, dancing, walking, jogging, trail rides, and participating in church activities. She also stated that she liked wearing shorts all the time. After the accident, she stated that she curtailed her dancing, walking, and jogging due to pain in her right knee. However, she said that her knee bothers her once in a while now, depending on her activity. She also testified that she stopped wearing shorts, except around her house, because she was afraid someone would see the scarring on her body.

7

Clara Landry, Green's friend, testified that prior to the accident, they would go out and eat and fish together. After the accident, she stated that Green stopped going out because she was embarrassed about how her body looked.

Green was awarded nothing for her loss of enjoyment of life. After reviewing the evidence, we cannot say that the jury erred in finding that she failed to prove that the accident detrimentally altered her life. The evidence reveals only that she no longer wears shorts in public. With regard to her physical activities, Green testified that her knee was her biggest problem in curtailing her jogging, dancing, and fishing. However, she admitted that this condition had mostly resolved itself by the time of trial. Accordingly, we find that it was reasonable for the jury to find that Green's life was not detrimentally altered as a result of her injuries. The judgment of the trial court awarding her zero damages for loss of enjoyment of life is affirmed.

## FAULT

In her final assignment of error, Green argues that the jury erred in finding that she was twenty-five percent at fault in causing this accident. As this is a finding of fact, it is reviewed pursuant to the manifest error—clearly wrong standard of review. *Stobart v. State, through Dep't Transp. and Dev.*, 617 So.2d 880 (La.1993). In reviewing the record, we find that the jury was presented with differing views of the evidence pertaining to the issue of fault.

The jury heard evidence that Green was attempting to pass two cars when the accident occurred. In a telephone statement to Allstate Insurance Company four days after the accident, Green indicated the presence of a white vehicle in between her's and Spriggs' vehicles prior to the impact. She said that the vehicle was

8

not involved in the accident. She further said that Spriggs had started slowing down at the time she tried to pass him. When questioned, Green testified that she was heavily medicated when she gave the statement, that she did not recall giving the statement, and that no such vehicle was present prior to the accident. However, despite her medicated state, she correctly related to the interviewer information pertaining to personal data and her speed, direction of travel, and visual awareness prior to the impact.

Spriggs testified that he was traveling at forty-five to fifty miles per hour and had activated his left turn signal a hundred feet prior to turning into a private driveway. He stated that he looked into his rear-view mirror and did not see Green's vehicle. He said that he never saw her attempting to pass his vehicle and that he had completed his left-hand turn when the impact occurred.

Louisiana State Trooper Dexter Bourque, the investigating officer, testified that a witness said there were at least four cars in line when Green attempted her passing maneuver; however, neither Spriggs nor Green mentioned the presence of any other vehicles. His report did not state whether Spriggs had his turn signal on prior to the accident, nor could he independently recall such. He further stated that Spriggs related that he never saw Green's vehicle prior to impact.

Based on these conflicting views, we cannot say that it was unreasonable for the jury to find that Green bore some of the fault in causing the accident. The jury was in the best position to evaluate the testimony and the evidence and, considering the conflicting testimony it heard from Green herself, we cannot say that it erred in

9

finding her twenty-five percent at fault.  Accordingly, the judgment of the trial court is affirmed and this assignment of error is dismissed as being without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is amended to award the plaintiff-appellant, Phyllis Green, $30,000 in damages for disfigurement. The judgment is affirmed in all other respects.  The costs of this appeal are assessed fifty percent to Green and fifty percent to the defendants-appellees, Edwin Spriggs and Fidelity and Deposit Companies.

**AFFIRMED AS AMENDED.**